STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. STEVEN
RAYMOND DAVIS, DEFENDANT-RESPONDENT.

Argued May 1, 1984—Decided June 26, 1984.

612

*Lloyd D. Levenson*, Chief Assistant Prosecutor, argued the cause for appellant (*Joseph A. Fusco*, Atlantic County Prosecutor, attorney; *James P. McClain*, Assistant Prosecutor, on the briefs).

*Joseph D. O'Neill* argued the cause for respondent (*Joseph D. O'Neill*, attorney; *Joseph D. O'Neill* and *Harold U. Johnson, Jr.*, on the brief).

*Susan T. Sinins*, Assistant Deputy Public Defender, argued the cause for *amicus curiae*, Office of the Public Defender of New Jersey (*Joseph H. Rodriguez*, Public Defender, attorney;

*Susan T. Sinins* and *Anderson D. Harkov*, Assistant Deputy Public Defenders, on the brief).

PER CURIAM.

This appeal arises under the provisions of the New Jersey Code of Criminal Justice permitting the imposition of the penalty of death for the commission of the crime of murder. *N.J. S.A.* 2C:11–3c. The case involves the question of the admissibility of certain kinds of evidence relating generally to the character of the defendant, offered as a mitigating factor under *N.J.S.A.* 2C:11–3c(5)(h), in the course of the trial phase of the case that is concerned solely with the penalty—death or life imprisonment—to be imposed on the defendant. The issue reaches us following an interlocutory order of the trial court that had rejected the admissibility of the proffered evidence, and the reversal of that order by the Appellate Division, which had granted leave to defendant to appeal the trial court's interlocutory ruling. Treating the State's petition for certification as a motion for leave to appeal an interlocutory order, we granted leave to appeal. 96 *N.J.* 303 (1984).

■ We entertain this appeal notwithstanding its interlocutory nature in view of its importance to the State and to the defendant in this case, as well as to other similarly situated defendants confronting the imposition of the penalty of death. In deciding to adjudicate the issue presented on this appeal, we stress that this Court has not yet had the occasion to consider the many constitutional, statutory, and procedural issues implicated in several capital cases that have not yet reached this Court. By our decision today we in no way foreshadow our future treatment of any such issue.

I

On April 12, 1983, defendant, Steven Raymond Davis, was indicted for murder. Defendant subsequently pled guilty, and, pursuant to the provisions of *N.J.S.A.* 2C:11–3c, a penalty trial

was scheduled. Jury selection began on February 21, 1984 and was completed on March 12, 1984.

On February 8, 1984, defense counsel advised the State that he intended to proffer, in mitigation of a death penalty verdict pursuant to *N.J.S.A.* 2C:11–3c(5)(h), the expert testimony of Professor Marvin E. Wolfgang, Ph.D. Dr. Wolfgang would testify as to the contents of a report prepared by him on February 7, 1984, that asserted that defendant was a likely candidate "for a thirty year sentence instead of a death sentence" because empirical studies demonstrate that a defendant sharing Mr. Davis' statistical profile "would never again commit another serious crime of any kind" after serving the mandatory minimum thirty year term. The statute provides that if the jury does not determine to impose the death penalty, the defendant shall be sentenced to a term of life imprisonment in which he shall not be eligible for release on parole until he has served a minimum term of thirty years. *N.J.S.A.* 2C:11–3.

Dr. Wolfgang holds a doctorate in sociology and is a member of the faculty of the department of sociology at the University of Pennsylvania. A review of his *curriculum vitae* and published works reveals that for more than twenty-five years a principal focus of Dr. Wolfgang's research has been the study of criminal violence, with specific emphasis upon the psychological and sociological determinants of violent crime. Dr. Wolfgang is described by defendant and *amicus* as an "eminent criminologist" who is an "expert in statistics." He holds no degrees in psychology or psychiatry, and has had no formal training in those fields.

Dr. Wolfgang's report on behalf of Mr. Davis was not based on any personal evaluation of defendant. (In fact, Dr. Wolfgang has never met Mr. Davis.) Rather, the professor relied upon demographic "features" that defendant possessed, and then selectively drew upon statistical research that demonstrates a low rate of recidivism among offenders sharing these demographic features.

His four-page report notes Mr. Davis' present age and that "he will be 57 years old were he sentenced to 30 years without parole as a minimum sentence." Dr. Wolfgang then cites his own research findings and "national statistics" to demonstrate that males aged 55–59 are highly unlikely to commit homicide. Moreover, "after age 29, as age increases crime rates decrease." Next, Dr. Wolfgang notes that according to statistics presented in a 1980 report of the U.S. Department of Justice and in a 1969 study by the New York Division of Parole, murderers are the least likely to commit subsequent offenses of any sort upon release from prison. Thus, according to Dr. Wolfgang, "the best available research shows that persons convicted of first degree murder * * * have the lowest rates of future offending among all types of offenders." The report proceeds to assert that

> [t]aking these factors into account, and recognizing that Mr. Davis has no previous crime record, that he would have served a minimum of 30 years in prison, and were he given this sentence, that he would minimally be 57 years old at the time of release, our conclusion is that Mr. Davis would never again commit another serious crime of any kind.

The State moved to exclude Dr. Wolfgang's testimony on the ground that it is irrelevant to any mitigating factor properly before the jury. The trial court ruled that the proffered testimony would be excluded during the penalty phase since the statement in no way pertained to Mr. Davis' individual character. The court concluded that while "the question of potential for rehabilitation" may be testified to as part of the indicia of a defendant's character, "the statistical approach doesn't tell us anything at all about a given defendant."

As noted, the Appellate Division granted defendant's motion for leave to appeal and reversed the trial court's ruling, thereby allowing defendant to introduce the testimony of Dr. Wolfgang. Thereafter, upon determining that no double jeopardy claims would attach, we granted the State leave to appeal. We also stayed the penalty phase trial, pending disposition of the appeal, and ordered that the unsworn jury of fifteen persons who

had been empanelled to determine defendant's penalty be discharged.

## II

*N.J.S.A.* 2C:11–3c(5) provides, in pertinent part:

The mitigating factors which may be found by the jury or the court are:

\* \* \* \* \* \* \* \*

(h) Any other factor which is relevant to the defendant's character or record or to the circumstances of the offense.

The parties to this action do not dispute that a defendant's potential for rehabilitation is an aspect of his character, and therefore may be considered as a factor militating in favor of a sentence less than death in the penalty phase of a capital proceeding. It is the means by which this defendant seeks to make the showing—through the introduction of statistical evidence of the rehabilitative potential of similarly situated defendants—that has prompted this appeal.

■ We determine that evidence consisting of statistical data based upon empirical studies can assist the jury in the penalty phase of a capital proceeding in evaluating an individual defendant's potential for rehabilitation as an aspect of his character presented as a mitigating factor under *N.J.S.A.* 2C:11–3c(5)(h). Accordingly, we hold that, subject to appropriate standards concerning its competency (such as its scientific reliability and the qualifications of the expert witness), evidence of this nature is relevant and admissible.

This holding generally comports with constitutional requirements. *Lockett v. Ohio,* 438 *U.S.* 586, 604, 98 *S.Ct.* 2954, 2964, 57 *L.Ed.*2d 973, 990 (1978) ("[T]he Eighth and Fourteenth Amendments require that the sentencer [in a capital case] not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character ...." (Emphasis in original)); *United States v. Grayson,* 438 *U.S.* 41, 47–48, 98 *S.Ct.* 2610, 2614, 57 *L.Ed.*2d 582, 588 (1978) ("[T]he sentencing judge is obligated to make his decision on the basis, among others, of

predictions regarding the convicted defendant's potential, or lack of potential, for rehabilitation"). We need not, however, for purposes of determining this interlocutory appeal, definitively consider or resolve any constitutional issues implicated in the question before us. We choose instead to rest our determination on state statutory grounds.

■ As found by the trial court, "character," within the context of *N.J.S.A.* 2C:11–3c(5)(h), can and should embrace those individual qualities that distinguish a particular person. An individual's capacity to reform—his potential for rehabilitation—pertains to his character. Consequently, evidence that is reasonably related to this potential is relevant as a mitigating factor under the statute.

Evidence of empirical studies and findings, including the statistical presentation and analysis of data, may under appropriate circumstances be sufficiently related to a defendant's rehabilitative potential to satisfy the statutory threshold of relevancy. Such evidence may, in effect, encapsulate ordinary human experience and provide an appropriate frame of reference for a jury's consideration of a defendant's character. For example, insofar as the proffered report in this case focuses primarily on defendant's present age and his age at the time of his earliest possible release, it can be noted that age, as a demographic variable, has consistently been found to be strongly related to subsequent criminal activity. *See, e.g.,* Cocozza & Steadman, "Some Refinements in the Prediction of Dangerous Behavior," 131 *Am. J. of Psychiatry* 1012 (1974) (examination of possible importance of variables other than those having to do with prior criminal activity, including variety of social and demographic factors, reveals that only one, age, is highly related to predictions of future violence).

Moreover, this kind of information, when presented by experts, can supplement or explain ordinary human experience and can assist laypersons in the deliberative process to reach sound determinations concerning an individual's character. In-

deed, it has been observed that a layperson with access to relevant statistics can assess a defendant's rehabilitative potential at least as well as, and possibly better than, those with psychiatric training in this area. *Barefoot v. Estelle,* — *U.S.* —, —, 103 *S.Ct.* 3383, —, 77 *L.Ed.*2d 1090, 1122 (1983) (Blackmun, J., dissenting) (citing *American Psychiatric Association Task Force Report, Clinical Aspects of the Violent Individual* 28 (1974)); *see also* J. Monahan, *The Clinical Prediction of Violent Behavior,* 47–49 (1981) ("the 'best' clinical research currently in existence indicates that psychiatrists and psychologists are accurate in no more than one out of three predictions of violent behavior"); Steadman & Morrissey, "The Statistical Prediction of Violent Behavior," 5 *Law & Human Behavior* 263, 271–73 (1981); Cocozza & Steadman, "The Failure of Psychiatric Predictions of Dangerousness: Clear and Convincing Evidence," 29 *Rutgers L.Rev.* 1084, 1101 (1976).

Pertinent analogies and past practice strongly indicate that a broad understanding of evidential relevance most closely conforms to the intention of the Legislature underpinning this most sensitive and critical aspect of the capital punishment statute. Relevant evidence traditionally has been broadly defined. Evidence Rule 1(2) states that "evidence having any tendency in reason to prove any material fact" is relevant. In determining relevance, the inquiry should focus upon whether the proffer "renders the desired inference more probable than it would be without the evidence." *State v. Deatore,* 70 *N.J.* 100, 116 (1976); *see Manieri v. Volkswagenwerk, A.G.,* 151 *N.J.Super.* 422, 429 (App.Div.1977), certif. den., 75 *N.J.* 594 (1978). We have noted that "this test is broad and favors admissibility." *State v. Deatore, supra,* 70 *N.J.* at 116.

 It must be acknowledged that in the sentencing phase of a capital proceeding—a life or death contest—a defendant is entitled to the use of all reliable, helpful information. The determinative discretion that is invoked in criminal sentencing is extremely sensitive. A sentencing judge may exercise a

far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed. *Williams v. New York,* 337 *U.S.* 241, 69 *S.Ct.* 1079, 93 *L.Ed.* 9337 (1949). This universal understanding of sentencing discretion is consistent with our traditional approach to the information that can and should be available generally in sentencing. Presentence materials can be placed before the sentencing tribunal without surmounting regular hurdles of evidential admissibility. Sentencing deliberations may appropriately take into account matters that would not satisfy conventional evidential standards. *N.J.S.A.* 2C:44–6; *R.* 3:21–2; *State v. Marzolf,* 79 *N.J.* 167 (1979); *State v. Green,* 62 *N.J.* 547 (1973). In short, the sentencing process should embrace an evidential inquiry "broad in scope, largely unlimited either as to the kind of information that may be considered, or the source from which it may come." *United States v. Tucker,* 404 *U.S.* 443, 446, 92 *S.Ct.* 589, 591, 30 *L.Ed.* 2d 592, 596 (1972).

We must ascribe to the Legislature full appreciation of the singular nature of the penalty phase of a capital proceeding and the ineluctable conclusion that doubts must be resolved in favor of admission when evidence of a mitigating factor is offered by the defendant.[1] "[S]o long as the evidence [introduced at a capital sentencing hearing] * * * does not prejudice a defendant, it is preferable not, to impose restrictions." *Zant v. Stephens,* —— U.S. ——, ——, 103 *S.Ct.* 2733, 2748, 77 *L.Ed.*2d

---

[1]Our determination is consistent with Senate Bill 950, the proposed amendment to *N.J.S.A.* 2C:11–3, which would make explicit and clarify the standards of admissibility for all evidence relevant to a defendant's establishment of any of the statute's mitigating factors. It provides, in salient part:

The admissibility of evidence offered by the State to establish any of the aggravating factors shall be governed by the rules governing the admission of evidence at criminal trials. *The defendant may offer, without regard to the rules governing the admission of evidence at criminal trials, reliable evidence relevant to any of the mitigating factors.* [Emphasis added.]

235, 256 (1983) (quoting *Gregg v. Georgia*, 428 *U.S.* 153, 203–04, 96 *S.Ct.* 2909, 2939, 49 *L.Ed.*2d 859, 891 (1976)).

Accordingly, it is our ruling that the proposed testimony of the defendant's expert, reflected in the report proffered in this case, generally satisfies broad standards of relevancy and is therefore admissible as a mitigating factor in the penalty phase of a capital proceeding, pursuant to *N.J.S.A.* 2C:11–3c(5)(h).

### III

We determine specifically on this interlocutory appeal no more than was actually presented for our consideration and resolution. We do not, and, indeed, on this record cannot, determine that the report, in the form presented, is admissible in respects other than relevancy. We consider the report merely as a proffer, sufficient to pose the legal question as to whether the type of evidence it represents satisfies standards of relevancy under *N.J.S.A.* 2C:11–3c(5)(h). We nonetheless deem it appropriate to comment generally on other aspects of admissibility that will undoubtedly arise in the penalty phase of the trial upon defendant's attempt to introduce this evidence.

The evidence as proffered relates to a subject matter that is appropriately within the competence of experts or specialists. Consequently, the testifying expert witness, Dr. Wolfgang, must be qualified. Further, the subject matter of his testimony must be established as scientifically reliable. We stress, however, that the conventional standards of competency, relating to both the expert's qualifications and the scientific reliability of the subject matter, are not to be strictly applied in this context—the penalty phase of a capital proceeding—in which the choice before the jury is between life and death.

We have recognized that standards of proof may vary depending upon the litigational context. *E.g., Romano v. Kimmelman*, 96 *N.J.* 66 (1984); *In re Polk License Revocation*, 90 *N.J.* 550 (1982). Evidential rules or standards of admissibility in the sense of the authenticity or competency of evidence may

likewise be varied depending upon the purpose to be served by the evidence. With respect to the sentencing of a convicted criminal, as noted, we have been extraordinarily tolerant as to the subject and form of evidence to be considered in this most delicate kind of determination. *Ante* at 619–620. In this phase of the administration of the criminal laws, courts have never insisted upon strict adherence to rules traditionally governing the relevance or competence of evidence. Even more so is judicial tolerance required in the sentencing phase of a capital case. "The imposition of death by public authority is * * * profoundly different from all other penalties," *Lockett v. Ohio, supra,* 438 *U.S.* at 605, 98 *S.Ct.* at 2965, 57 *L.Ed.*2d at 990, and the difference between capital cases and other cases is "the basis of differentiation in the law in diverse ways * * *." *Williams v. Georgia,* 349 *U.S.* 375, 391, 75 *S.Ct.* 814, 823, 99 *L.Ed.* 1161, 1174 (1955). Because of this fundamental distinction between the death penalty and all other punishments, there is "a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina,* 428 *U.S.* 280, 305, 96 *S.Ct.* 2978, 2991, 49 *L.Ed.*2d 944, 961 (1976). Further, "it is natural that counsel for the condemned in a capital case should lay hold of every ground which, in their judgment, might tend to the advantage of their client * * *." *Lambert v. United States,* 159 *U.S.* 660, 662, 16 *S.Ct.* 135, 40 *L.Ed.* 296 (1895).

█ A lowered threshold of admissibility for evidence proffered in mitigation of the death penalty in the sentencing phase of a criminal proceeding is consistent with this recognition. In this setting, it would be incorrect for the court to apply the evidential prerequisites with the same strictness that is required in the guilt phase of the trial. *See, e.g., Romano v. Kimmelman, supra,* 96 *N.J.* 66; *State v. Cavallo,* 88 *N.J.* 508 (1981); *State v. Hurd,* 86 *N.J.* 525 (1981). When guilt is not the determinative issue, greater flexibility and latitude may be accorded a factfinder in his or her use of expert testimony.

*See, e.g., State in the Interest of C.A.H. & B.A.R.,* 89 *N.J.* 326 (1982).

 To the extent that evidence of the type sought to be proffered in the case at bar arguably may suffer shortcomings when measured by strict rules of evidential relevance and competence, such deficits will go to the weight of the testimony, properly relegating to the adversarial process the task of "separating the wheat from the chaff." *Barefoot v. Estelle, supra,* —— *U.S.* at ——, 103 *S.Ct.* at 3398, 77 *L.Ed.*2d at 1109 (psychiatric testimony concerning defendant's future dangerousness offered pursuant to specific provision in Texas death penalty statute held admissible despite fact that such testimony is not based on personal examination of defendant).

However, relaxed standards for admissibility are not to be equated with automatic admissibility. Judicial tolerance is not judicial license. For example, in this case the court may, upon a persuasive showing, consider the report, or any of its component parts, incomplete and therefore unhelpful. Arguably, the report could, upon countervailing proofs presented by the prosecutor through cross-examination or rebuttal evidence, be considered untrustworthy because of its failure to consider the educational background, employment history, familial status, criminal record, or some other important demographic factor relating to the potential for rehabilitation. It might also be considered flawed because of its use of, or its undifferentiated emphasis upon, statistical data based upon race, gender, or some other suspect characteristic.[2] The court must retain

---

[2] In this regard we note that Dr. Wolfgang's proffered report refers to race—*i.e.,* that defendant is a "white male"—as a demographic factor. The use of such a variable may have unacceptably invidious implications, bearing upon the ultimate admissibility of the expert's testimony. We mention this circumstance, but do not further consider the issue because it has not been raised or addressed in the present appeal and, further, it has not been shown to what extent Dr. Wolfgang's proposed testimony will coincide with his report in all of its present detail. We assume that the parties and trial court will be alert to this issue in the sentencing proceeding.

discretion to exclude the evidence, in whole or in part, if its probative value is substantially outweighed by its unfounded or speculative character and the risk of confusion of the essential issues.

## IV

In conclusion, we repeat our rulings. In the penalty phase of a capital case, the defendant may offer in evidence, through an expert witness, testimony relating to empirical studies, including the presentation and analysis of statistical data, that is generally relevant to the issue of potential for rehabilitation as an aspect or trait of character when character is presented by a defendant as a mitigating factor under *N.J.S.A.* 2C:11–3c(5)(h). Such evidence, when reasonably related to the defendant, may be considered evidence to assist the jury in determining whether defendant's character constitutes a mitigating factor under *N.J.S.A.* 2C:11–3c(5)(h). We also determine that the competency of such evidence, in terms of its reliability and the qualifications of the expert, is to be determined without strict adherence to the standards governing competency of expert testimony otherwise applicable in the guilt phase of a criminal case.

In disposing of this matter we have recognized that we are dealing with an issue that has arisen in an interlocutory context. Our purpose in resolving the narrow, albeit important, issue before us is to enable trial of the penalty phase of this defendant's case to be completed without further delay. Our ruling will also clarify this issue as it may arise in other capital cases still to be tried. We emphasize, however, for the reasons stated, that in resolving the question presented, we in no way intend to foreshadow views of the outstanding questions implicating the constitutionality and other legal aspects of the statute authorizing the imposition of the death penalty.

The judgment below is modified and, as modified, affirmed.

*For affirmance as modified* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed* —None.