UNITED STATES of America, Plaintiff–Appellee,

v.

Paul Douglas HESSLING (87–3344), and Jackie D. Paschall (87–3407), Defendants–Appellants.

Nos. 87–3344, 87–3407.

United States Court of Appeals, Sixth Circuit.

Argued March 29, 1988.

Decided April 26, 1988.

Gary B. Zimmerman (argued), Pittsburgh, Pa., for defendant-appellant in No. 87-3407.

William Hunt (argued), Robert Brichler, Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Arthur P. Anninos, argued, Cincinnati, Ohio, for defendant-appellant in No. 87-3344.

Before KEITH, MARTIN and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Paul Douglas Hessling and Jackie D. Paschall appeal their jury convictions for federal drug offenses.

In July of 1986, Hessling, Paschall, and seventeen codefendants were indicted for numerous offenses relating to cocaine trafficking in Cincinnati. Hessling, Paschall, and three other defendants were tried jointly.

As part of the investigation leading to these indictments, law enforcement officers followed Sheila Cornelius to Miami. On March 27, 1985, Cornelius met Paschall in room 902 of the Fontainebleau Hotel. The officers checked into room 900, which adjoined room 902 by way of a common door. The officers testified at trial about conversations between Cornelius and Paschall they claim to have overheard through the common door. Prior to trial, Paschall moved to suppress this testimony. Following a hearing, the district court denied the motion.

After the jury had been impanelled, Hessling pled guilty to some of the counts and proceeded to trial on the remaining counts. Paschall moved for a severance, and the district court denied this motion.

Hessling called Dr. Milton Burglass as an expert witness. Burglass testified about the mental and behavioral characteristics of "high-dosage cocaine users." Al-

though it permitted Burglass's testimony, the district court rejected Hessling's proposed instruction in favor of its own instruction about the reliability of witnesses who used cocaine.

Hessling received two consecutive sentences for possession of cocaine with intent to distribute.

Paschall now argues that the district court erred in denying his motion to suppress evidence and abused its discretion in denying his motion for severance. Hessling argues that the district court erred in rejecting his proposed instruction and erred in imposing consecutive sentences. Hessling also argues that his convictions were not supported by sufficient evidence. We discuss each of these arguments in turn.

## SUPPRESSION OF EVIDENCE

■ Paschall argues for the suppression of testimony of law enforcement officers about conversations between Paschall and Cornelius in room 902 of the Fontainebleau Hotel. The officers, who did not have a search warrant to use artificial listening devices, claim that they were able to hear some conversations in room 902 by placing an ear against the room 900 side of the common door. To refute this claim, Paschall hired an audio expert to determine whether a person could hear a conversation in room 902 through the common door. The expert placed microphones on the room 900 side of the common door and concluded that the human ear could not hear a conversation that took place in the far corner of room 902. From this conclusion, Paschall argues that the law enforcement officers must have used some type of artificial listening device to overhear the conversations. The district court, however, found the expert testimony unpersuasive because there was no evidence that the conversations between Paschall and Cornelius took place exclusively in the far corner of room 902. Consequently, the expert's testimony does not establish that the officers could not have heard the conversations without the aid of artificial devices.

The officers testified that no artificial devices were used to enhance their ability to hear conversations through the door.

As Paschall recognizes, there is no reasonable expectation of privacy in a conversation that can be heard without the assistance of an artificial device. *United States v. Agapito*, 620 F.2d 324 (2d Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). The district court's finding that there was no evidence that the conversations took place exclusively in the far corner of room 902 is not clearly erroneous. Consequently, we affirm the district court's refusal to suppress testimony about conversations overheard through the common door.

## SEVERANCE

■ "[T]he general rule in conspiracy cases is that persons jointly indicted should be tried together and that this is particularly true where the offenses charged may be established against all of the defendants by the same evidence and which result from the same series of acts." *United States v. Dye*, 508 F.2d 1226, 1236 (6th Cir.1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975). Once defendants have been properly joined under Federal Rule of Criminal Procedure 8(b), a "strong showing of prejudice" is required to justify severance. *United States v. Reed*, 647 F.2d 678, 689 (6th Cir.), *cert. denied*, 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981). Moreover, a district court's denial of a motion for severance is reversible only for an abuse of discretion. *United States v. Warner*, 690 F.2d 545, 552 (6th Cir.1982).

■ Paschall claims that he was prejudiced by the district court's refusal to try him separately. Specifically, Paschall argues that he was prejudiced by the testimony of Hessling. After the jury had been selected, Hessling pled guilty to conspiring to possess cocaine with intent to distribute, a claim to which Paschall pled not guilty. In testifying in his own defense against other charges, Hessling admitted participating in the conspiracy.

■ In general, the testimony of a codefendant who admits his guilt during trial does not warrant a severance. *United States v. Wilson*, 657 F.2d 755, 765–766 (5th Cir.1981), *cert. denied*, 455 U.S. 951,

102 S.Ct. 1456, 71 L.Ed.2d 667 (1982). In *United States v. Bavers*, 787 F.2d 1022, 1028 (6th Cir.1985), this circuit affirmed a denial of severance where a codefendant in a conspiracy case pled guilty during the trial and testified for the government. We do not believe that *Bavers* can be distinguished on the grounds that Hessling testified in his own defense rather than as a government witness. Furthermore, Paschall has not made the strong showing of prejudice necessary to justify severance. Had Paschall been tried separately, Hessling would have been available as a witness for the prosecution and, therefore, still could have testified about his involvement in the crimes to which he pled guilty. Consequently, we find that the district court did not abuse its discretion in denying Paschall's motion for severance.

## JURY INSTRUCTIONS

■ Dr. Burglass, an expert in the field of cocaine addiction, testified about the mental and behavioral characteristics of "high-dosage cocaine users." Burglass defined a "high-dosage cocaine user" as someone who inhales more than three grams of cocaine per week or who smokes any amount or who injects any amount intravenously. Burglass testified that his clinical experience suggested to him that high-dosage cocaine use frequently impairs the user's ability to accurately recall events. Burglass, however, was unable to support his testimony with any study comparing the memory capabilities of high-dosage cocaine users with the memory capabilities of other persons.

Hessling proposed that the following instruction be given to the jury:

If you find the testimony of Dr. Burglass credible, then you may consider the following: if a Government witness is also a high dose narcotic user, there are additional reasons why his testimony should be considered with great care. A high dose narcotic user, even if not addicted, may be so impaired by his past use that his memory has been so impaired that the times and sequences have been so distorted that his testimony may not be credible without independent cor-

roboration. You, of course, may give the testimony such weight as you may think proper after consideration of all the relevant circumstances.

The district court rejected the proposed instruction. Having instructed the jury to give Dr. Burglass's testimony "such weight ... as you think it warrants," the district court instead gave the following instruction:

The testimony of one who shows to have used an addictive drug during the period of time about which he testifies and who provides evidence against the defendant for pay or for protection from punishment or for personal advantage must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by any of these circumstances, or by his interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that he had received either financially or as a result of being protected from punishment. And if you determine that the testimony of such a witness was affected by any one or more of those factors, you should keep in mind that such testimony is always to be received with caution and weighed with great care.

Hessling cannot complain that the district court refused to admit the expert's testimony. Hessling argues only that, having admitted Burglass's testimony, the district court erred in rejecting the proposed instruction.

The findings of social science research can provide an invaluable frame of reference in deciding factual issues involved in a specific case. *Accord, e.g., State v. Davis*, 96 N.J. 611, 618, 477 A.2d 308, 311 (1984) (social science research "may, in effect, encapsulate ordinary human experience and provide an appropriate frame of reference for a jury's consideration"). Furthermore, such frames of reference can be effectively conveyed to a jury through care-

fully-worded instructions.[1] Hessling's proposed instruction, however, would not have achieved this laudable goal. To the contrary, the proposed instruction was prejudicially worded and would have been of no more practical value to the jury than the district court's instruction. As such, the district court properly rejected Hessling's proposed instruction.

The proposed instruction inappropriately referred to the unreliability of testimony by "a government witness." Burglass had studied neither the government witnesses involved in this trial nor government witnesses in general. Burglass's testimony addressed only high-dosage cocaine users as a group. Consequently, phrasing the instruction in terms of "government witnesses" would unfairly misrepresent Burglass's testimony.

Moreover, the proposed instruction would not have provided the jury with a more useful frame of reference. In effect, Hessling's awkwardly-worded instruction told the jury that a high-dosage narcotic user "may be" an unreliable witness. The district court's instruction also conveyed this simple message. This statement, however, is of little value to a fact finder; any witness "may be" unreliable. A more useful instruction would have informed the jury whether social science research has shown high-dosage narcotic users to be less reliable witnesses and, if so, how much less reliable high-dosage narcotic users are as a group than are other witnesses.[2] We recognize, of course, that this type of more useful instruction could not have been given in this case because Burglass had not conducted any study comparing the memory capabilities of high-dosage cocaine users with the memory capabilities of other persons.

Like Hessling's proposed instruction, the district court's instruction reiterated to the jury that "[t]he testimony of one who shows to have used an addictive drug during the period of time about which he testifies ... must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses." Unlike Hessling's proposed instruction, however, the district court's instruction was carefully worded to accurately reflect the testimony of Dr. Burglass. Consequently, the district court properly rejected Hessling's proposed instruction in favor of its own instruction.

DOUBLE JEOPARDY

■ The double jeopardy clause of the fifth amendment prohibits criminal defendants from being punished more than once for the same offense. Hessling argues that the consecutive sentences imposed on him for possession of cocaine with intent to distribute violate this clause.

Hessling was convicted of four counts of possession of cocaine with intent to distribute. The district court ordered that the sentences for two of these counts be served consecutively. The first of these two counts charged Hessling with possession of seven kilograms of cocaine in May of 1984. The other count charged Hessling with possession of three kilograms of cocaine in August of 1984. Relying on *United States v. Fiallo–Jacome*, 784 F.2d 1064 (11th Cir. 1986), Hessling argues that these two counts were part of a continuous possession on which two sentences cannot be imposed. In *Fiallo–Jacome*, the eleventh circuit vacated the defendant's consecutive sentences for possessing cocaine. The first count charged the defendant with possession of cocaine in south Florida over a four-month period. The second count charged the defendant with possession of a

---

**1.** See Walker and Monahan, *Social Frameworks: A New Use of Social Science in Law*, 73 Va.L. Rev. 559 (1987).

**2.** *Id.* at 595. "[F]ramework instructions should address four aspects of the court's empirical conclusions. First, the instructions should state the factual determination that is being framed or placed in context for the jury by the research.... Second, the instructions should

identify the factors (or 'variables') found in the research that bear upon the determination the jury is to make.... Third, instructions should describe the form of the relationship that exists between or among the identified factors.... Finally, instructions should describe the magnitude of the relationship that is addressed in the empirical framework."

kilogram of cocaine in a specific south Florida city on a specific date within the four-month period. The *Fiallo–Jacome* court concluded that the defendant had but one continuous possession because the government did not establish that the kilogram was held separately from the rest of the cocaine. *Id.* at 1067.

We believe that *Fiallo–Jacome* is easily distinguished. Unlike *Fiallo–Jacome*, the activities alleged in Hessling's second count do not "fall within the broader pattern of activities alleged in [the first count]." *Id.* at 1066. Moreover, the record clearly indicated that the three kilograms of cocaine possessed by Hessling in August were purchased and held independently from the seven kilograms possessed by Hessling in May. Consequently, the imposition of consecutive sentences for these separate possessions does not violate the double jeopardy clause.

Hessling's last argument is that he was convicted on several counts on which there was insufficient evidence. We have reviewed the record, and we find this argument without merit.

Judgments of the district court as to both Hessling and Paschall are affirmed.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and in Judge Martin's carefully drafted opinion, but write separately to note that I suspect cases in which a jury would be helped by evidence on social science research are likely to be few and far between.