UNITED STATES of America, Plaintiff,

v.

Kenneth A. WEINER, Steven M. Lewin, and Alvin B. Gendelman, Defendants.

Cr. No. 89–80883.

United States District Court,
E.D. Michigan, S.D.

April 25, 1991.

See also 755 F.Supp. 748.

Sheldon Light and John Roth, Asst. U.S. Attys., Detroit, Mich., for plaintiff.

Paul D. Borman, Federal Defender, and Kenneth R. Sasse, Detroit, Mich., for defendant Weiner.

Richard M. Lustig, Birmingham, Mich., for defendant Lewin.

Martin E. Crandall, Stringari, Fritz, Kreger, Ahearn, Bennett & Hunsinger, Detroit, Mich., for defendant Gendelman.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL

FEIKENS, District Judge.

Defendants Kenneth A. Weiner, Steven M. Lewin and Alvin B. Gendelman ("Weiner" "Lewin" "Gendelman") were found guilty after a jury trial of numerous charges of wire and mail fraud, 18 U.S.C. §§ 1341 and 1343; interstate transportation of property taken by fraud, 18 U.S.C. § 2314; conspiracy to defraud the United States, 18 U.S.C. § 371; and filing materially false income tax returns, 26 U.S.C. § 7206(1).[1]

All defendants have moved for a new trial, based upon this court's denial of defendants' motions for severance under Federal Rule of Criminal Procedure 14. Defendants argue that their defenses were antagonistic to each other and claim that, as a result, prejudicial spillover occurred, preventing the defendants from receiving a fair trial. I held a hearing to consider defendants' motions on March 22, 1991.[2] As I have previously ruled, and as I explain more fully below, the joinder of these defendants was proper and not unfairly prejudicial. Accordingly, defendants' motions for a new trial are DENIED.

Defendants argue that they were prejudicially misjoined under Federal Rule of Criminal Procedure 14, claiming that the jury was confused and misled as a result of their joint trial. Severance is necessary only if defendants can meet their burden of showing compelling prejudice from a joint trial under Rule 14. Rule 14 provides in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The general rule is that parties who are jointly indicted should be tried together. *See, e.g., United States v. Davis*, 809 F.2d 1194, 1207 (6th Cir.), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987); *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986). This is particularly true in cases involving conspiracy or joint participation in a common scheme; where the charges are to be proven by the same evidence, resulting from the same series of acts, there is a strong policy in favor of joint trials. *United States v. Horton*, 847 F.2d 313, 317 (6th Cir.1988); *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir. 1988). In order to escape this general rule, a defendant "must carry the 'heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials.'" *United States v. Davis*, 809 F.2d at 1207, (quoting *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984)); *accord United States v. Benton*, 852 F.2d 1456, 1469 (6th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582.

---

1. Lewin was acquitted on count 4. Gendelman was acquitted on counts 4, 12, 19, 30, and 36.

2. Defendant Lewin's motion was not heard at that time due to scheduling difficulties of counsel. It was rescheduled and later submitted on the briefs.

■ As I have previously noted, the standard in this circuit for granting severance is strict.

> Separate trials are not mandated merely because one defendant claims that he and a codefendant will present antagonistic defenses. "Different defenses by co-defendants do not require a severance of their trials. To prevail [on a motion for severance], the defendants must show that 'antagonism between co-defendants will mislead or confuse the jury.'" *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir.1980) (per curiam) (quoting *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir.1979), *cert. denied*, 444 U.S. 1074 [100 S.Ct. 1020, 62 L.Ed.2d 756] (1980)). The mere fact that each defendant "points the finger" at another is insufficient; the defendant must show that the antagonism confused the jury.

*United States v. Horton*, 847 F.2d at 317. Thus a conflict between the defenses of various defendants, however great, does not justify severance unless the conflict is such as will mislead or confuse the jury. Moreover, it is presumed that the jury can "sort out evidence applicable to each defendant and render its verdict accordingly." *Id.* Against this background, I examine defendants' arguments.

■ Weiner argues that the jury was confused as to his role in the pyramid investment scheme because his co-defendants were allowed to introduce evidence pertaining to Weiner's period of "cooperation" with the government. Specifically, Weiner refers to tape-recordings of conversations between himself and Detroit Mayor Coleman A. Young, which Weiner made while working as an informant for the Federal Bureau of Investigation and the Internal Revenue Service. The tapes were made during the two-year period immediately following the collapse of the pyramid investment scheme which formed the basis for this indictment. Weiner argues that the material contained in the tapes was irrelevant to his codefendants' defense and merely served to prejudice the jury against him.

Weiner's argument mischaracterizes the sequence of events which led to the playing of the tapes at trial. On July 30, 1990, before trial commenced, I entered an order providing that:

> Before any tape, transcript, or related material may be used in trial proceedings, the attorneys for the defendants desiring such use shall make a specific showing of relevancy at an *in camera* hearing. The Court will thereupon determine the conditions of use, if any, including admissability.

Subsequently, I ruled that any defendant wishing to introduce any portion of the tapes into evidence must submit the same to the court two days before their intended use, whereupon I would rule whether the submitted portions should be excluded on grounds of unfair prejudice or lack of probative value. These orders were never rescinded.

As the trial progressed, defendants Gendelman and Lewin indicated a desire to introduce various portions of the tapes into evidence. Weiner initially opposed the introduction of any tapes. However, when Weiner decided to take the stand, he changed his position, and thereafter proposed to play several tapes. I allowed Weiner to play these tapes and to testify concerning them. On cross-examination, I also allowed the government and defense counsel to question Weiner on the tapes which he played. Weiner now argues that the playing of the tapes and subsequent cross-examination prejudiced his right to a fair trial.

I cannot accept this argument for several reasons. First, when Weiner decided to offer the tapes into evidence, he waived any challenge he may have had to their admissability, and cannot now complain that their admission unduly prejudiced his defense. Moreover, his decision to testify put his credibility at issue and opened the door to a wide range of inquiry on cross-examination, including questions related to the period of his alleged cooperation with the government. Having opened the door to such questioning, he cannot claim that he was unduly prejudiced thereby. Finally,

I note that Weiner offered the tapes as exculpatory evidence in an attempt to prove that the government reneged on its alleged promise not to prosecute in exchange for information against Mayor Young. Having offered the tapes as exculpatory evidence, it is indeed ironic that Weiner now claims they misled the jury. In fact, the insightful questions posed by the jury suggest the opposite.

 Nor can co-defendants claim they were unfairly prejudiced by the admission of these tapes. Initially, it was the co-defendants who sought admission of the tapes as alleged evidence that Weiner diverted investors' monies to Mayor Young, and as evidence of Weiner's manipulative abilities. Having sought the tapes for their own defense, Gendelman and Lewin cannot claim their admission confused the jury or created unfair prejudicial spillover.

Gendelman additionally argues that joinder unduly prejudiced his defense because the jury was allowed to draw erroneous inferences about Gendelman's guilt based on Weiner's accusations. Specifically, Gendelman contends that his constitutional right not to testify was abridged when Weiner's counsel argued in closing that "Alvin Gendelman's records ... are here today, just like most of the records in this case, because of Ken Weiner. Who is it that's intending to deceive who here?"[3] Gendelman argues that he could not effectively rebut this assertion because he did not testify, and could not constitutionally be made to do so. Thus, Gendelman asserts, his joinder with Weiner materially prejudiced his right to a fair trial.

Gendelman's argument is flawed in several respects. First, the jury's conviction of Weiner negates any inference that they accepted his attempt to escape blame by "pointing the finger" at his co-defendants.

Second, the record is replete with evidence, quite apart from Weiner's testimony, supporting the jury's conviction of Gendelman and Lewin. For example, several witnesses testified that Gendelman received large commissions on investments, passed along false stories of Weiner's alleged ability to purchase gold at below-market prices, and kept regular records of investments and returns. It was also shown that Lewin made substantial profits from the scheme, conducted numerous banking transactions in furtherance of the scheme, and was a signatory on several bank accounts used to perpetuate the scheme. From this evidence the jury could reasonably conclude that Gendelman and Lewin knowingly aided and abetted Weiner in the perpetration of the fraud.

Third, Gendelman and Lewin were not precluded from taking the stand in their own defense and rebutting Weiner's assertion that "all records are here because of Ken Weiner." They chose not to do so. That was a risk they knowingly took.[4] Gendelman cannot now claim that he was unfairly prejudiced thereby, simply because Weiner testified and pointed the finger at him. To hold otherwise would mean that whenever defendants are tried jointly, and one defendant testifies against his co-defendants, the co-defendants must be granted a severance or they will be put under undue pressure to forgo their right not to testify. Such a holding would significantly reduce the occurrence of joint trials and ignore the important policies behind them. *See, e.g., United States v. Horton,* 847 F.2d at 317 (noting the strong policy in favor of joint trial when charges will be proved by the same series of acts); *see also United States v. McPartlin,* 595 F.2d 1321, 1334 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (holding that antagonistic defenses do not require the granting of severance even when one defendant takes the stand and blames his co-defendant for the crime).

In this circuit, severance is mandated only when antagonism among defendants will mislead or confuse the jury. *See, e.g., United States v. Horton,* 847 F.2d at 317.

---

3. *See* Volume 50, page 108, of the trial transcript.

4. The jury was given a cautionary instruction reminding them that each defendant had the right not to testify and that the failure to testify should not be taken as evidence of guilt.

Here, the jurors' insightful questions, and carefully considered verdicts (including the acquittals on several counts), clearly indicate that they were not confused as to the role played by each defendant in the fraudulent scheme.

Accordingly, defendants' motion for a new trial is DENIED.