# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1286-20

IN THE MATTER OF
REGISTRANT R.R.

_____

Submitted November 8, 2021 – Decided January 4, 2022

Before Judges Sabatino and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. ML-20-15-0033.

Joseph E. Krakora, Public Defender, attorney for appellant R.R. (Olivia Nardone, Assistant Deputy Public Defender, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent State of New Jersey (Natalie Pouch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Registrant R.R. appeals from the Law Division's October 21, 2020 "Classification Order Authorizing Tier 2 Classification and Inclusion on the Internet." The order sustained a prosecutor's classification of registrant as Tier-Two Moderate Risk, under the Registration and Community Notification Laws

(Megan's Law), N.J.S.A. 2C:7-1 to -23.  According to registrant, under Megan's Law, he was entitled to a ten-point reduction of his risk score on the Registrant Risk Assessment Scale (RRAS) because of the unsupported inclusion of factor three (age of victim).  If discounted, registrant would have received a reduction of his overall RRAS score from fifty-one to forty-one, which would keep him in the Tier Two-Moderate Risk classification but could support a later favorable tier reduction.[1]

On appeal, registrant argues that the trial judge erred in finding that the State established by clear and convincing evidence the ages of the children in a pornographic video found on his computer.  He contends that factor three (age of victim) should be reduced from "moderate risk" (under thirteen) to "low risk" (thirteen to seventeen) because the reviewing judge improperly relied on an arrest report that "guess/estimate[d]" the children's ages to be between ten- to twelve-years-old, and on a two-page confession, which could not be located and produced for the judge's consideration.  We disagree and affirm.

---

[1]  A reduction in the total RRAS score may allow registrant to move from a Tier Two to a Tier One classification in a future re-evaluation.  See Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws (rev. Feb. 2007) at 53 [hereinafter Guidelines] (citing N.J.S.A. 2C:7-7).

A-1286-20

Registrant's obligation to comply with Megan's Law's requirements arose from his convictions in New York and in federal court. Specifically, in June 2005, a New York grand jury indicted registrant on ten counts of Possessing a Sexual Performance by a Child, N.Y. Penal Law § 263.16. On November 30, 2005, he was sentenced to a one-year term.

Registrant's New York conviction arose from a search warrant detectives executed at registrant's home after receiving a tip that he was engaging in an internet chat of a sexual nature with an adult posing as a fourteen-year-old boy. Registrant, who was home at the time of the execution, agreed to cooperate with investigators and gave a two-page and six-page confession.[2] A forensic examination of registrant's computer uncovered child pornography, including photos of what turned out to be a thirteen-year-old boy from North Dakota in "various stages of dress and sexual contact with [registrant]."

According to a June 14, 2015 six-page written statement given by registrant to New York police, he admitted to engaging in an online chat with the thirteen-year-old from North Dakota and to subsequently traveling there and engaging in oral sex and anal intercourse with the child in a motel room. In

---

[2] The two-page confession was not located and thus not produced for purposes of the Megan's Law hearing. The six-page confession was considered by the trial court and is part of the record on appeal.

addition, a July 13, 2005 supplemental report issued by a detective indicated that registrant also "gave a two page . . . written confession as to his downloading of child pornography via the internet in addition to meeting a [thirteen]-year-old boy online and traveling to Fargo, North Dakota to engage in sex with the minor." The ages of the children in the child pornography were not specified in the supplemental report, but the arrest report stated as follows:

> [Registrant,] on or about June 14, 2006 [in the] County of Suffolk, State of New York, knowing the character and content thereof knowingly had in his possession or control a performance which includes sexual conduct by a child less than [sixteen] years of age; in that [registrant] possessed on his computer a computer file containing a video of two 10-year[-]old to 12-year[-]old juvenile males engaging in oral sex. This information is based partly on the oral admissions of [registrant].

On November 4, 2005, a federal grand jury in the District of North Dakota indicted registrant on three charges arising from his travelling to North Dakota and sexually assaulting his victim. On October 10, 2006, registrant pled guilty to Production of Materials Involving Sexual Exploitation of a Minor and was later sentenced to a fifteen-year term. See [R.R.] v. United States, No. 3:08-CV-116, 2008 U.S. Dist. LEXIS 110117, at *5 (D.N.D. Dec. 18, 2008). Registrant was released from federal custody on July 31, 2019, and advised of his obligation to register.

A-1286-20

On August 2, 2020, the Ocean County Prosecutor served registrant with a notice of Tier Two-Moderate Risk of Re-offense classification based on an RRAS score of fifty-six, which subjected registrant to community notification and placement on the Sex Offender Internet Registry (Internet Registry). Registrant challenged the State's calculations as to factor one (degree of force), which was scaled as "moderate risk" and assigned a score of one and a multiplier of five points, and factor three (age of victim), which was scaled as "high risk" and assigned a score of three and a multiplier of fifteen points.

In connection with factor one, the North Dakota victim reported that registrant forced him to remove his clothing by threatening to hurt or kill him and that he told him several times that if he told anyone about the sexual assault, registrant would come back and kill him.[3] Factor three was based upon law enforcement's "investigation . . . reveal[ing] that . . . registrant possessed on his computer a . . . file containing a video of two 10-12-year-old juvenile males engaging in oral sex." After negotiations, the State agreed to reduce factor one to "low risk" and assigned zero points because the lower classification was consistent with the facts of the North Dakota case.

---

[3] The victim's statement regarding the use of force and threats were later found to be untrue.

A-1286-20

Registrant maintained his challenge to factor three (age of victim) at his October 19, 2020 tier hearing before the trial judge,[4] who ultimately denied registrant's challenge and affirmed the State's classification of registrant as a Tier Two-Moderate Risk of Re-offense based on a recalculation of the RRAS of fifty-one. In his oral decision placed on the record on October 19, 2020, the judge found that after considering the evidence and counsel's argument regarding factor three, the State proved by clear and convincing evidence that the children's ages were ten- to twelve-years-old and that factor three was properly classified as a "moderate risk." The judge explained his reasons as follows:

> Now, the question is the age of the victim of high risk. The Court has reviewed both the complaint, which has the information from law enforcement that [their] ages [to be] between [ten] and [twelve] and that appears to be part of the law enforcement's determination. Also, law enforcement indicated and alluded to a confession by the [registrant] at that time. The Court did hear from the State after hearing from his attorney that it was a six-page confession and nothing was contained there regarding those ages. But the State has brought up there was also a two-page one which they could not find. So

---

[4] "The Supreme Court's Outline of Procedures for Megan's Law Cases and the Megan's Law Bench Manual require completion of judicial review proceedings within forty-five days from service of Notice of Classification." In re Registrant J.W., 410 N.J. Super. 125, 132 (App. Div. 2009).

there is the inference that [the] information was contained there.

I am going to find by clear and convincing evidence that the [fifteen points] should remain in accordance [with] the RRAS scale score.

This appeal followed.

On appeal, registrant argues that the State failed to demonstrate by clear and convincing evidence "that the juveniles in the video were in fact under [thirteen]-years-old" because it failed to provide any information as to how the investigator determined age. As an example, registrant notes that "an investigat[ive] report may briefly describe the video/image and estimate a juvenile's age based on the physical development of the child." Because there is no such report, registrant argues, age cannot be determined clearly and convincingly. Registrant further observes that because a child that is ten- to twelve-years-old "may look very similar" to a thirteen-year-old, in the absence of a more detailed analysis or investigation, "the ages could be easily mistaken" and not determinable clearly and convincingly. He concludes that the children's ages in the arrest report are "merely a guess/estimate" and that the reviewing judge erred in his affirmance of the "moderate risk" classification under factor three. We disagree.

Under the Guidelines and the accompanying Registrant Risk Assessment Scale Manual (RRA Manual), each Megan's Law registrant is assigned to a tier using the RRAS, which determines the scope of community notification. Guidelines at 22-23. The RRAS consists of four categories: (1) Seriousness of Offense, (2) Offense History, (3) Characteristics of Offender, and (4) Community Support. RRA Manual at 3. Within the four categories, thirteen re-offense risk factors[5] are weighed and rated as low, moderate, or high risk. RRA Manual at 4-8. "Depending on that rating, the offender is attributed a score of 0, 1, or 3, respectively." In re Registrant J.M., 167 N.J. 490, 499 (2001). Thereafter, the factors are weighed by different multipliers. For instance, each factor under the "Seriousness of Crime" category is multiplied by five, whereas each factor under the "Offense History," "Characteristics of Offender," and "Community Support" is multiplied by three, two, and one, respectively. In re Registrant C.A., 146 N.J. 71, 104 (1996).

---

[5] The factors are: (1) Degree of Force, (2) Degree of Contact, (3) Age of the Victim, (4) Victim Selection, (5) Number of Offenses/Victims, (6) Duration of Offensive Behavior, (7) Length of Time Since Last Offense, (8) History of Antisocial Acts, (9) Response to Treatment, (10) Substance Abuse, (11) Therapeutic Support, (12) Residential Support, and (13) Employment/Educational Stability.

The combined points from all factors determine the final score for tiering purposes and scope of required community notification. Guidelines at 22-23. A registrant can fall into one of three tiers. Tier One is anything below 37 points and designated "low risk," which requires notification of registrant's presence in the community to law enforcement only. RRA Manual at 4; Guidelines at 22. Tier Two is 37-73 points and designated "moderate risk," which requires notification to law enforcement, schools, and registered community organizations. RRA Manual at 4; Guidelines at 22-23. Tier Three is 74-111 points and designated "high risk," which requires notification to law enforcement, schools, registered community organizations, and members of the public likely to encounter registrant. RRA Manual at 4; Guidelines at 23. All registrants are subjected, at minimum, to Tier One notification. C.A., 146 N.J. at 81. In addition to community notification, N.J.S.A. 2C:7-12 to -20 requires that registrants in the tiers two or three are to be placed on the Internet Registry unless exempted by N.J.S.A. 2C:7-13(d).

The Supreme Court "vested reviewing courts with the obligation of providing procedural due process to ensure the appropriateness of a tier classification." C.A. 146 N.J. at 94 (citation omitted). The reviewing judge is tasked with conducting an evidentiary and investigatory hearing, that is civil and

9

A-1286-20

not criminal in nature, in which it carefully balances registrant's due process and fundamental fairness rights and the community's right of protection against registrant's risk of re-offense. Ibid. Judicial determinations regarding tier classification and community notification are made "on a case-by-case basis within the discretion of the court" and "based on all the evidence available," not simply by following the "numerical calculation provided by the [RRAS]." In re Registrant G.B., 147 N.J. 62, 78-79 (1996) (quoting C.A., 146 N.J. at 109). Ultimately, "a value judgment" is required in determining the proper tier classification and community notification. Id. at 78 (quoting C.A., 146 N.J. at 109).

"[T]he ultimate determination of a registrant's risk of re-offense and the scope of notification is reserved to the sound discretion of the trial court." Id. at 79. As such, "[w]e give deference to the findings of the trial judge where . . . his findings [are] supported by the record." State v. N.G., 381 N.J. Super. 352, 365 (App. Div. 2005) (citation omitted). Such deference is appropriate and owed to the reviewing judge's determination, "regardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence." State v. S.N., 231 N.J. 497, 514 (2018) (citation omitted). That is because "a standard of deference to a trial court's fact findings, even fact findings based

10

solely on . . . documentary evidence, best advances the interests of justice in a judicial system that assigns different roles to trial courts and appellate courts." State v. S.S., 229 N.J. 360, 379 (2017).

The Supreme Court has also "prescribed a two-step procedure for evidence production." C.A., 146 N.J. at 83. "In the first step, the prosecutor has the burden of going forward with prima facie evidence that 'justifies the proposed level and manner of notification.'" Ibid. (citation omitted). "In the second step, assuming the prosecutor's burden is met, the registrant then has the burden of producing evidence challenging the prosecutor's determinations on both issues." Id. at 83-84 (citation omitted).

To dispute a proposed tier designation, a registrant can, for example "introduce evidence at the hearing that the [RRAS] calculations do not properly encapsulate his specific case." G.B., 147 N.J. at 85. Or, registrant may "produce[] proof, whether in the form of reliable hearsay, affidavit, or an offer of live testimony, that is sufficient to raise a 'genuine issue of material fact,' that the tier classification and the manner of notification are inappropriate." C.A., 146 N.J. at 97. While registrant bears the burden of producing evidence that the tier classification and manner of notification is inappropriate, it is ultimately the

State's burden to establish by clear and convincing evidence that the proposed tier classification is warranted. G.B., 147 N.J. at 77.

"Once the State has satisfied its burden of going forward, the court 'shall affirm the prosecutor's determination unless it is persuaded by a preponderance of the evidence that it does not conform to the laws and Guidelines'" based upon a reviewing judge's independent review of the case and its merits. C.A., 146 N.J. at 84 (quoting Doe v. Poritz, 142 N.J. 1, 32 (1995)).

In determining a registrant's classification, the judge may rely upon the RRAS. However,

> [t]he Supreme Court has made clear that even though the RRAS provides a useful guide for the prosecutors and court to evaluate risk of re-offense, the court must still make a value judgment in determining the proper tier classification and scope of community notification based on all of the evidence available to it. These determinations are best made on a case-by-case basis within the discretion of the court. [C.A., 146 N.J. at 108-09]; [G.B., 147 N.J. at 78-79].

> Of course, such judgments must be based on evidence that is clear and convincing. In re Registrant M.F., 169 N.J. 45, 54 (2001). While the Rules of Evidence do not apply, the court may consider all reliable information. Sexual offenses, not the subject of a conviction, may be considered in the risk calculus, and may be supported by documentation deemed reliable including, e.g. admissions by the Registrant, police reports and psychiatric reports. In re Registrant C.A., 285 N.J.

12

> Super. 343, 347-48 (App. Div. 1995), <u>aff'd</u>, [C.A.], 146 N.J. at 71.
>
> [<u>J.W.</u>, 410 N.J. Super. at 130-31 (emphasis added).]

Reliable documents that may not be admissible under our Rules of Evidence, may still be considered by a judge making a classification determination because the "hearing process . . . is not governed by the rules of evidence." <u>C.A.</u>, 146 N.J. at 83 (internal citations omitted). Thus, "[t]he reviewing court may rely exclusively on documentary evidence 'on all issues.'" <u>Ibid.</u> (citation omitted). Nonetheless, the reviewing judge shall only consider evidence that is "relevant and trustworthy." <u>See</u> N.J.R.E. 101(a)(3). Thus, relaxing the standards of admissibility is "not to be equated with automatic admissibility." <u>C.A.</u>, 146 N.J. at 95 (quoting <u>State v. Davis</u>, 96 N.J. 611, 623 (1984)). Instead, hearsay evidence that is reliable under the totality of the circumstances of the statement being considered is "admissible and sufficient to allow the State to sustain its burden of presenting a prima facie case." <u>Id.</u> at 95-96. As such, a reviewing judge "may take into account any [credible] information available," which may be in the form of "admissions by the registrant, police reports, [or] pre-sentencing reports." <u>Id.</u> at 83 (quoting <u>RRA Manual</u> at 5).

Here, therefore, we are not persuaded by registrant's argument that the reviewing judge should not have considered the arrest report's description of the depicted children's ages. Contrary to registrant's contention, the arrest report is very specific when it provided information as to the contents of the video, including the children's ages. Particularly, the arrest report stated: (1) the location of where the file was found (registrant's computer), (2) the type of file (video), (2) the number of participants (two), (3) the participants' gender (male), (4) the age of the participants (ten- to twelve-years-old) and (5) the type of act being performed (oral sex).

In addition, the arrest report noted that this information was "partly" based on registrant's admission. There was no showing before the reviewing judge that the statements were unreliable as unsupported by registrant's admissions or the report's author's viewing of the recording stored on registrant's computer. Notably, registrant never certified that the ages of the children were in fact different.

The supplemental arrest report states that registrant "gave a two-page and six-page written confession as to his downloading of child pornography via the internet in addition to meeting a [thirteen] year old boy online and traveling to Fargo, North Dakota to engage in sex with the minor." Because the subject of

14

the six-page written confession is about registrant's trip to North Dakota and having sexual intercourse with a child, a reasonable inference can be drawn that the two-page confession is about the "downloading of child pornography," which contains the information of the children's ages included in the arrest report as the prosecutor argued, without objection, during the hearing. State v. Smith, 167 N.J. 158, 178 (2001) (noting that a prosecutor may draw reasonable inferences from evidence and that appellate courts have "acknowledged that if a prosecutor's arguments are based on the facts of the case and reasonable inferences therefrom, what is said in discussing them, 'by way of comment, denunciation or appeal, will afford no ground for reversal'") (quoting State v. Johnson, 31 N.J. 489, 510 (1960)).  Indeed, during the hearing, registrant conceded the possibility that the information could have come from his oral admission.  Specifically, he contended "we don't really know who came up with those ages.  It could have been [registrant] saying it, or it could have been the investigator."

Moreover, as already noted, registrant did not present any evidence that contradicted or provided the actual age of the children depicted in the video. Without such evidence there was no reason advanced to support a finding that the arrest reports were unreliable.  See C.A., 146 N.J. at 98 (finding that police

15

reports may be deemed reliable because it is "presume[d] that police officers . . . will accurately report on the statements given to them"). Simply arguing that a child that is ten- to twelve-years-old may be mistaken for a thirteen-year-old, without more, did not "create a material factual question" or trump the reviewing judge's sound discretion. See C.A., 146 N.J. at 110 (remanding to reviewing court after finding that "material factual question about the nature and circumstances [of a factor] may have a significant effect on [registrant's] tier classification").

Here, the judge conducted an independent review of the record before him, affirmed the prosecutor's Tier Two-Moderate Risk of re-offense classification, including the moderate risk assessment for factor three (age of victim). In particular, he observed that law enforcement determined the children's ages as being ten- to twelve-years-old in its arrest report. In addition, he found that an inference can be drawn from the references to a confession in the supplemental report that the children's ages were contained in the two-page confession supports law enforcement's determination. Under the totality of the circumstances, he ultimately found that the State clearly and convincingly met its burden of proof. We have no cause to disturb that result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-1286-20