UNITED STATES of America,
Plaintiff-Appellee,

v.

Phil C. COLLINS, Defendant-Appellant.

No. 78–5330.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 22, 1979.

Decided April 10, 1979.

PER CURIAM.

After a jury trial in the United States District Court for the Southern District of Ohio, appellant Collins was convicted of seven counts of mail fraud, in violation of 18 U.S.C. § 1341 (1976). He was sentenced to four months' imprisonment and received a $7,000 fine.

The evidence at trial showed that Collins, the owner and operator of seven nursing homes in southern Ohio, submitted falsely inflated cost reports for 1973 to the Ohio Department of Public Welfare for each of his nursing homes as part of a scheme to defraud the Medicaid cost reimbursement program, administered for the United States Department of Health, Education and Welfare by the State of Ohio. Each of the fraudulent reports was transmitted to the state welfare agency through the mails.

Prior to 1973, the State reimbursed nursing home operators on a flat-rate basis, regardless of the actual expenses incurred in providing care to Medicaid patients. In 1973, the State adopted a so-called "cost reporting" system of reimbursement, whereby each operator would be reimbursed for his actual costs so long as they were reasonable, subject to a per diem ceiling. Under the new system, an operator was required to prepare and file year-end cost reports scheduling his actual outlays for items such as salaries, food, maintenance, and depreciation. If an operator's total reimbursable costs as reflected in these reports exceeded the amount he had received in interim monthly payments from the State, the State was obligated to pay him the balance, subject to the per diem ceiling.

The government demonstrated that the expenses Collins listed on the 1973 cost reports were falsely inflated by comparing these amounts with the figures entered for the same items on Collins' 1973 Schedule C tax returns and on the books of the nursing homes involved. The discrepancies were striking. For example, Collins' tax return and books show that he spent $72,070 on

Arnold Morelli, Cincinnati, Ohio, for defendant-appellant.

James C. Cissell, U. S. Atty., Christopher K. Barnes, Asst. U. S. Atty., for plaintiff-appellee.

Before WEICK, ENGEL and MERRITT, Circuit Judges.

salaries at the Pleasant Ridge Nursing Home in 1973. But the figure entered on the cost report for the same expense was $82,070, or exactly $10,000 more. Collins' tax return and books show $12,545 for food expenses. The cost report lists $17,545 or exactly $5,000 more. On his 1973 tax return, Collins claimed $1,830 depreciation expense. The cost report claims $3,830, or exactly $2,000 more. An examination of the other cost reports reveals the same pattern of inflated expense claims.

An auditor testified that the false cost reports for 1973 had resulted in overpayments to Collins totaling approximately $88,000. Other testimony showed that Collins had claimed $100,000 for his own services in 1973 when he was reasonably entitled to only half that amount. And several of Collins' nursing home administrators testified that their actual salaries were substantially less than the figures Collins had submitted to the State on the reports.

On appeal, Collins alleges that officials within the Ohio Department of Public Welfare affirmatively misled him regarding the nature of the cost reports and that, as a result, he viewed the reports as simple negotiating documents and the expenses claimed thereon as mere bids, around which later bargaining with the State over an equitable reimbursement figure would center. Collins argues, alternatively: (1) that the mail fraud statute is unconstitutionally vague as applied in this case because he could not have been on notice that submitting inflated cost reports could constitute criminal fraud; (2) that the government should be "equitably estopped" from prosecuting him because he overstated his expenses on the reports in reliance upon the state officials' misrepresentations; and (3) that the evidence was insufficient to prove his criminal intent.

 The arguments fail, because the record does not support the allegation upon which they are all premised. The witnesses from the Department of Public Welfare did concede that, during its inaugural phase, the cost reporting system was in chaos and that portions of the cost report forms were technical and confusing. But the record is clear that, at worst, the state employees were unresponsive to Collins' inquires about the new system, telling him "to do the best he could" with the forms, to file them on time, and that adjustments could be made on final audit. While these comments reflect that the system was going to be administered flexibly so as to permit later correction of errors arising from the participants' unfamiliarity with new and technical reporting requirements, we cannot find anything in them that Collins could reasonably have interpreted as a license to overstate his expenses to the degree and with the consistency he did, and the jury obviously could not either. The forms themselves were sufficient to put Collins on notice that they were not simply "negotiating documents," for they made clear on their face that the figures requested were Collins' actual costs of operation. Moreover, the forms directed Collins to certify before signing the bottom line that his entries were "true and correct statements prepared from the books and records of the facility in accordance with applicable instructions."

 The government's case was not, as Collins argues, fatally undermined by the fact that claims for personal salary *were* a proper subject for later negotiations with the State under the new system. The testimony was that Collins' salary claims were inflated by as much as 100% over the amount to which he could reasonably have thought himself entitled. In our view, that was strong evidence of his fraudulent intent. We think the jury could reasonably have concluded that, in submitting the grossly overstated salary figures, Collins was not so much interested in presenting a bold negotiating posture for purposes of later bargaining with the state over an equitable settlement as he was in fleecing the system. In any event, even if we were to ignore the fraudulent salary claims altogether, there remains more than ample evidence of Collins' fradulent intent in the numerous other falsely inflated entries he made on the cost reports.

Collins' remaining claims are all without merit. He complains about the government's use of summaries and charts to aid the jury's understanding of the cost reports and other financial data. Federal Rule of Evidence 1006 commits the admissibility of such materials to the sound discretion of the trial court, and we find no abuse of discretion here. The contents of the summaries were grounded in the evidence, and the trial judge carefully instructed the jury as to their proper use. While, as Collins reminds us, we have in the past encouraged trial courts to conduct hearings out of the jury's presence "in order to determine that everything contained in the summary is supported by the proof," *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968), *cert. denied*, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969), such proceedings are not invariably required, especially when, as in this case, the summaries are straightforward and their basis in the evidence clear.

Nor is there anything to Collins' claim that the state agency's disclosure of the cost reports to the Department of Justice violated the Ohio Privacy Act, Ohio Rev.Code Ann. § 1347.01 *et seq.* In the first place, the provision requiring that evidence disclosed in violation of the Act be suppressed "in any criminal action," section 1347.07(C), was repealed prior to the commencement of Collins' trial. 1977 Senate Bill 224, effective August 26, 1977. More fundamentally, the cost reports are not protected by the Act, since they contain only financial data relating to the operation of Collins' nursing homes, and not "personal information" as that term is defined in section 1347.01(E) of the Act. And there was no violation of the federal privacy laws either, since HEW's disclosure of the cost reports to the Department of Justice was for a "routine use," 5 U.S.C. §§ 552a(a)(7) and (b)(3) (1976), and was also for a "criminal law enforcement activity," 5 U.S.C. § 552a(b)(7) (1976).

We have also carefully considered Collins' attacks upon the trial court's jury instructions on the elements of fraud and upon portions of the prosecutor's closing argument, and we have found no prejudicial errors.

The judgment of conviction is affirmed.