**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan Leonardo PAULINO (90–5090); Ada Fernandez, a/k/a Ada Paulino (90–5094); Edward Chazulle (90–5091); Alex Vieyra (90–5092); Juan Carlos Paulino, a/k/a John Wilson, a/k/a Edward Sanchez (90–5093), Defendants–Appellants,**

**Gary Helton, Steve Pierre, Samuel Torres, Defendants.**

**Nos. 90–5090 to 90–5094.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1991.

Decided June 3, 1991.

Louis DeFalaise, U.S. Atty., Jane E. Graham, Asst. U.S. Atty. (argued), Lexington, Ky., for plaintiff-appellee.

Juan Paulino, pro se.

C. William Swinford, Jr. (argued), Todd, Walter & Cox, Lexington, Ky., for Juan Leonardo Paulino.

Billie J. Davenport (argued), Lexington, Ky., for Edward Chazulle.

Donald D. Waggener (argued), Lexington, Ky., for Alex Vieyra.

David R. Marshall (argued), Lexington, Ky., for Juan Carlos Paulino.

Andrew M. Stephens (argued), Lexington, Ky., for Ada Fernandez.

Before NELSON and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Defendants appeal their convictions on charges of conspiring to possess and distribute cocaine in violation of 21 U.S.C. § 846, and possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant Juan Leonardo Paulino also challenges his conviction for conducting a continuing criminal enterprise with respect to violations of 21 U.S.C. §§ 841(a)(1) and 846, in violation of 21 U.S.C. § 848; and his conviction on two counts of evading taxes, in violation of 26 U.S.C. § 7201.

## FACTUAL BACKGROUND

This case involves a scheme to transport cocaine from Miami, Florida for distribution in Lexington, Kentucky. After moving from Miami to Lexington sometime in 1986, the defendants began transporting or "muling" cocaine. Two or three members would travel by rental car to Miami where

defendant Juan Leonardo Paulino ("Leonardo Paulino") would purchase cocaine from a garage in northwest Miami. He would then buy an Igloo cooler, remove its lining, carve out the foam at the bottom of the cooler, place the cocaine in this space, and then fill the cooler with sandwiches and drinks to disguise its contents. Another member of the conspiracy would return with the cooler to Lexington by bus, where the cocaine would then be delivered to Leonardo Paulino at either a motel or an apartment to be prepared for distribution. The cocaine would be cut with inositol and acetone and bagged in ounce quantities for the street selling, and/or sold in bulk to other dealers.

Defendant Edward Chazulle transported cocaine for Leonardo Paulino from 1987 until his arrest in Georgia in April of 1988 for possessing 1½ kilograms of cocaine. The vehicle Chazulle was driving at the time was registered in the name of Leonardo Paulino. Chazulle's driver's license reflected an address associated with Leonardo Paulino. In November of 1987, defendant Alex Vieyra also started transporting cocaine from Miami to Lexington for Leonardo Paulino. Vieyra was arrested some four months following his indictment.

After Chazulle's arrest, Leonardo Paulino enlisted the help of former co-defendant and government witness Samuel Torres. Torres testified that he made approximately six trips between May or June of 1988 and March of 1989 from Miami to Lexington. Torres' testimony reflected that each trip substantially followed the pattern described above. Torres also testified that the proceeds from the drug sales were typically wired to Miami using Western Union money orders and that defendant Ada Fernandez was the customary recipient, using her own name and others. Torres described Fernandez as the person responsible for handling the money and doing the banking.

In September of 1988, defendant Juan Carlos Paulino ("Carlos Paulino"), who had just been released from jail, joined the drug trafficking venture. On March 9, 1989, Torres and Carlos Paulino made a drug run, returning from Miami via bus and carrying the cocaine hidden in a cooler. As will be described below, they were arrested shortly after arriving in Lexington. The testimony at trial established that Torres alone was responsible for transporting at least 3¾ kilograms of cocaine from Miami to Lexington on behalf of Leonardo Paulino, and that Carlos Paulino was responsible for transporting between ¾ of a kilogram of cocaine and 1¾ kilograms of cocaine.

Other government witnesses included Harry Hughes and former co-defendant Gary Helton. Hughes stated that his knowledge of Leonardo Paulino, Carlos Paulino, Vieyra, and Fernandez was through drugs. Hughes testified that he made four trips to Miami for Leonardo Paulino. His testimony corroborated Torres' description of the drug trafficking scheme. In all, Hughes testified to transporting approximately 13 kilograms of cocaine.

Helton was the last to enter the conspiracy. Helton met Carlos Paulino in January of 1989, when Helton started purchasing cocaine from Carlos Paulino. Helton drove Carlos Paulino to Miami in a car rented in Helton's name at the request of Carlos Paulino. Helton testified that Carlos Paulino returned to Lexington by bus carrying a cooler hiding cocaine and Helton returned in the rental car. Helton made a second trip to Miami for Leonardo Paulino. In all, Helton received a total of 29½ ounces cocaine from Carlos Paulino and Leonardo Paulino as payment for those trips.

The remainder of the government's proof consisted primarily of material corroborating the manner in which the Paulino drug enterprise was conducted. The government introduced records showing car rentals during the periods of time testified by Torres, Hughes, and Helton. Other government witnesses testified to the use of motel rooms and apartments by the Paulino group for drug trafficking. Their testimony was consistent with the testimony of the three drug trafficking witnesses. Also, wire transfers were introduced showing the flow of proceeds from Lexington to Miami.

## FACTS RELATING TO MOTION
## TO SUPPRESS

On or about February 7, 1987, the Lexington Police Drug Enforcement Unit began investigating the activities of Leonardo Paulino and Fernandez after receiving confidential information that the two were involved in a large scale drug trafficking operation between Miami, Florida and Lexington, Kentucky. In late 1988, a confidential informant reported that Leonardo Paulino used rental cars from Thrifty–Rent–A–Car on Versailles Road in Lexington. The Lexington police began surveilling both the bus station in Lexington and Paulino's apartment in February of 1989. On February 14, 1989, they observed a Thrifty rental car parked at the apartment. The officers also retrieved from the apartment a number of one-way ticket receipts which reflected a pattern of trips from Miami, Florida to Lexington, Kentucky on the second Wednesday of the month, and rental car receipts from Thrifty–Rent–A–Car.

The Lexington police set up surveillance at the Lexington bus station on March 8, 1989, focusing on buses that originated in the south Florida area. Based on information provided by the confidential informant, the officers were looking for one to three individuals, primarily hispanic or black, carrying an Igloo cooler. On March 9, 1989, a black male and a hispanic male were observed disembarking from a Florida to Lexington bus. One individual, later identified as Carlos Paulino, was carrying a Playmate cooler; the other, who later turned out to be Torres, was carrying a suitcase. The two entered a car that had arrived at the bus station approximately forty minutes earlier. Carlos Paulino placed the cooler on the back seat of the car next to Torres. The driver of the vehicle moved over, and Carlos got behind the wheel and drove off.

The officers did not stop the vehicle at that point because they did not have sufficient units to make the stop and had been informed by the confidential informant that Carlos Paulino had been in possession of an Uzi machine gun. The officers established surveillance of the vehicle and ran a check on the license plate. Due to a transmittal error in the number of the plate, the officers were unable to get a report on the plate.

Approximately five minutes after they left the bus station, the Drug Enforcement Unit decided to stop the vehicle in order to identify the occupants and determine whether they were associated with Leonardo Paulino. Although four units were involved in the stop, only six of the officers made the initial approach. The officers asked the individuals to step out and identify themselves and at least one of the officers had his weapon drawn. Carlos Paulino failed to produce a driver's license and falsely identified himself as "Juan Leonardo Paulino." One of the officers testified that he knew the name given by Carlos Paulino was false. Torres identified himself as Torres. At that point, the officers removed the cooler from the back seat of the vehicle and conducted a protective search of the car and its contents. Upon examination of the cooler, the officer noticed a crack in the corner of the lining and removed the lining from the cooler revealing two plastic bags, which subsequently were verified to contain cocaine. The officers arrested Carlos Paulino and Torres.

## PROCEDURAL HISTORY

On May 17, 1989, an indictment was returned charging Juan Leonardo Paulino, Ada Fernandez, Gary Helton, Edward Chazulle, Alex Vieyra, Steve Pierre, Carlos Paulino, and Samuel Torres with one count of conspiring to distribute cocaine between 1987 and March 9, 1989; Carlos Paulino and Torres with one count of possession with the intent to distribute 752 grams of cocaine on March 9, 1989; and Leonardo Paulino with conducting a continuing criminal enterprise with respect to violations of 21 U.S.C. §§ 841(a)(1) and 846, in violation of 21 U.S.C. § 848. On August 2, 1989, a superseding indictment was returned. The superseding indictment was identical to the May 17, 1989, indictment as to the first three counts; and added two counts charging Leonardo Paulino with evading taxes in the amounts of $41,471 and $29,813 in the

calendar years of 1987 and 1988, respectively, in violation of 26 U.S.C. § 7201.

On May 16, 1989, a hearing was conducted on Torres' and Carlos Paulino's motions to suppress evidence seized when they were arrested in Lexington, Kentucky, on March 9, 1989. The motions were later denied.

On October 4, 1989, defendant Torres plead guilty to conspiracy to distribute cocaine (Count I). On October 10, 1989, defendant Helton similarly plead guilty to Count I. After denying the parties' various pretrial motions, the remaining defendants went to trial on October 11, 1989. On October 24, 1989, the jury convicted the defendants as to all counts. The defendants were sentenced on December 21, 1989.

On appeal, defendants raise the following issues:

I. Whether the district court erred in denying Torres and Carlos Paulino's motion to suppress the evidence obtained in the March 9, 1985 search of the cooler.

II. Whether the defendants were entitled to a multiple conspiracy instruction.

III. Whether the indictment adequately charged a continuing criminal enterprise violation with respect to Leonardo Paulino.

IV. Whether the district court improperly instructed the jury on the continuing criminal enterprise count.

V. Whether the district court erred in overruling the defendants' motions for severance.

VI. Whether the district court erred in permitting a summary witness to testify.

VII. Whether the district court erroneously admitted the introduction of evidence of "other crimes" relating to an Uzi handgun found at the time Vieyra and Leonardo Paulino's arrest, to Leonardo's prior drug dealing, and to Chazulle's arrest in Georgia.

VIII. Whether the district court's finding as to the amount of cocaine involved in the conspiracy was clearly erroneous.

IX. Whether Carlos Paulino's role in the offense enhancement was justified.

X. Whether Carlos Paulino's prior conviction was improperly considered in calculating his guidelines.

## DISCUSSION

### I.

 Defendants Vieyra and Carlos Paulino challenge the district court's denial of their motions to suppress the cocaine seized as a result of the stop and subsequent search of the cooler on March 9, 1989. Because Vieyra never raised the issue below, he has waived his right to appeal. Fed.R.Crim.P. 12(b)(3) & (f).[1] We will therefore consider only Carlos Paulino's arguments. Carlos Paulino does not dispute the existence of the facts justifying a *Terry* stop. Rather, he contends that the stop was in fact an arrest, and that the government was therefore required to demonstrate probable cause, which ran only to the cooler and not to the automobile in question. The government counters that the search was justified as both a protective search and/or as a probable cause search.

### A.

 It is well established that an officer may legally search for weapons if a reasonably prudent officer in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *United States v. Kelly*, 913 F.2d 261, 264 (6th Cir.1990). In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court held that these safety concerns, in the context of roadside encounters, justify the search of the passenger compartment of an automobile, limited to

---

1. In addition, Vieyra was not in possession of the cooler or the cocaine at the time it was seized, nor did he assert any ownership interest in the cooler or the automobile. Thus, Vieyra had no expectation of privacy sufficient to confer standing upon him to challenge the search in question. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

those areas in which a weapon may be placed or hidden, if the police officer possesses a reasonable belief based on specific and articuable facts that the suspect is dangerous and may gain immediate control of the weapons. *Long,* 463 U.S. at 1049, 103 S.Ct. at 3480.

■ In this case, we find that the officers acted reasonably in searching the cooler for weapons. First, the officers had prior information that Carlos Paulino carried an Uzi gun, and had reasonable suspicion to believe that the driver of the vehicle was in fact Carlos Paulino. *See United States v. Hardnett,* 804 F.2d 353, 356 (6th Cir.1986) (informant's tip is sufficient to establish reasonable suspicion), *cert. denied,* 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). Second, the cooler was in the passenger area of the vehicle where the defendants had ready access to it and could have easily concealed a weapon. The number of officers on the scene, even when coupled with the fact that the cooler and the defendants were outside the vehicle, did not obviate the need for a protective search of the vehicle and its contents. Thus, we find that the search of the cooler was justified as a protective search under *Long.*

### B.

■ In the alternative, the government argues that the search at issue was justified as a probable cause search. A search of a vehicle for contraband as opposed to a weapon cannot be justified under *Terry. See Long,* 463 U.S. at 1049 n. 14, 103 S.Ct. at 3481 n. 14; *United States v. Barrett,* 890 F.2d 855, 862 (6th Cir.1989). It is well settled, however, that a warrantless search of a vehicle lawfully stopped by the police does not violate the fourth amendment if the officers have probable cause to believe the vehicle contains contraband. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Ross,* 456 U.S. 798, 799, 102 S.Ct. 2157, 2159, 72 L.Ed.2d 572 (1982); *United States v. Crotinger,* 928 F.2d 203, (6th Cir., 1991). Furthermore, if probable cause justifies the search of a lawfully

stopped vehicle, then that probable cause extends to every part of the vehicle and any containers that may conceal the object of the search. *Ross,* 456 U.S. at 824, 102 S.Ct. at 2172. Probable cause is determined not by the nature of the container in which the contraband is secreted, but by the object of the search and the places in which there is probable cause to believe it may be found.

Defendant relies on *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), in support of his argument that probable cause ran only to the cooler and not to the entire automobile. In those cases, the Supreme Court held that the moving vehicle exception to the warrant requirement did not apply to a footlocker and suitcase, respectively, which the police had probable cause to believe contained contraband prior to their being placed in the trunks of the automobiles. Concededly, the police in the instant case had prior knowledge that the cooler contained cocaine secreted in its lining. Unlike *Chadwick* and *Sanders* however, where the luggage was out of control of the defendants once they were inside the vehicle, here the cooler was in the defendants' control and out of sight of the agents from the time it was placed in the car until the vehicle was eventually pulled over. As found by the district court, the cocaine could have easily been removed from the cooler and concealed elsewhere in the car. For this reason, we believe that probable cause extended to the vehicle.

We find the instant case more akin to *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). In *Johns,* the Supreme Court upheld the validity of the warrantless search of packages discovered in the back of a pickup truck on the basis of the automobile exception. In that case, United States customs agents observed two airplanes, which they had reason to believe were transporting marijuana, meet two pickup trucks in an isolated desert airstrip. Thereafter, they observed individuals covering packages in the back

of the truck with a blanket. The packaging was similar to that which the officers knew to be used to enclose marijuana, and they smelled marijuana emanating from the package. The *Johns* Court distinguished *Chadwick*, commenting that in *Chadwick* there had been an immediate seizure of a closed footlocker from the trunk of an automobile and the police therefore had no probable cause to believe that the automobile, as contrasted with the footlocker, contained contraband. *Johns*, 469 U.S. at 482, 105 S.Ct. at 884.

In *Johns*, unlike the instant case, the agents were unaware of the fact that the packages contained marijuana until they approached the vehicle. However, the Supreme Court also found that they had reason to believe that marijuana might be contained elsewhere in the vehicle since the customs officers on the ground were unable to observe the airplanes after they were landed, and consequently did not see the packages loaded into the pickup truck. *Id.* 469 U.S. at 482, 105 S.Ct. at 884. Similarly, in the instant case, the cooler was out of the officers' view for several minutes, an adequate amount of time to remove the contraband from the cooler and hide it elsewhere in the vehicle. Thus, under the authority of *Ross* and *Johns*, we conclude that probable cause ran to the vehicle as well as the cooler.

## II.

■■■ All five defendants argue that the trial court committed reversible error in refusing to give a multiple conspiracy instruction. If only one conspiracy is alleged in the indictment and the evidence adduced at trial can reasonably be construed to support a finding of multiple conspiracies, the resulting variance between the indictment and the proof constitutes reversible error if the appellants can demonstrate prejudice. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Warner*, 690 F.2d 545, 548 (6th Cir.1982).

■■■ This court has stated that in determining whether the evidence showed single or multiple conspiracies it must be remem-

bered that the essence of the crime of conspiracy is agreement; and that in order to prove a single conspiracy the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal. *Warner*, 690 F.2d at 548-49 (citations and quotations omitted). On the other hand, the government is not required to prove an actual agreement among the various conspirators in order to establish a single conspiracy. *Id.* at 549. Further, in a "chain conspiracy" such as the one at issue here, it is enough that each member of the conspiracy realizes that he is participating in a joint enterprise, even if he does not know the identities of many of the participants. *Id.* *See also United States v. Davenport*, 808 F.2d 1212, 1215–16 (6th Cir.1987).

Viewing the evidence in the light most favorable to the government, we find overwhelming evidence in the record of a single "chain" conspiracy, headed by Leonardo Paulino. Testimony at trial revealed that virtually all of the members of the conspiracy were related by blood or childhood friendship, and the membership remained relatively stable. Throughout the period of the conspiracy, the common objective was the transportation of cocaine from Miami to Lexington for distribution; and the manner of dealing and distributing, through the use of rental cars and buses, remained remarkably consistent throughout the conspiracy. Virtually all of the trips were made directly at the behest and instruction of Leonardo Paulino.

Fernandez, Leonardo Paulino, and Carlos Paulino point to the various activities of Gary Helton, Harry Hughes, Javier de la Rosa, Steve Pierre, and Steve Gossett as evidence of multiple conspiracies. However, we find that these contentions are not supported by the facts. Because we find no error in the district court's refusal to give a multiple conspiracy instruction, we need not address the defendants' allegations of prejudice.

## III.

Defendant Leonardo Paulino argues that the district court erred in denying his mo-

tion to dismiss Count III of the indictment, which charges him with engaging in a continuing criminal enterprise ("CCE").[2] Leonardo Paulino contends that because Count III does not set forth the predicate offenses which allegedly constitute the "continuing series of violations" element of the CCE count, but merely tracks the language of the statute, and fails to incorporate by reference any other counts in the superseding indictment as predicate offenses, the indictment violates his fifth amendment right to be tried only upon charges specifically returned by a grand jury and his sixth amendment right to adequate notice.

The issue presented is one of first impression in this circuit. Several other circuits have held that for constitutional purposes, an indictment charging a CCE offense is sufficient if it articulates in statutory language the elements of the violation, and need not list the specific predicate offenses of the "continuing series of violations" element.[3] *United States v. Martell,* 906 F.2d 555, 558 (11th Cir.1990); *United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir.) (indictment sufficient although not alleging five individuals with whom the defendant acted in concert), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); *United States v. Sterling,* 742 F.2d 521, 526 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Sperling v. United States,* 692 F.2d 223, 226 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *United States v. Johnson,* 575 F.2d 1347, 1356 (5th Cir.1978), *cert. denied,* 440

U.S. 907, 99 S.Ct. 1213, 1214, 59 L.Ed.2d 454 (1979). Three other circuits have held that an indictment was sufficient where the predicate offenses were alleged in other counts of the indictment. *United States v. Staggs,* 881 F.2d 1527, 1531 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *United States v. Moya–Gomez,* 860 F.2d 706, 752 (7th Cir. 1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Becton,* 751 F.2d 250, 256–57 (8th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

 We agree with those circuits which have held that all that is required to satisfy defendant's fifth amendment right to be tried only upon offenses presented to a grand jury is evidence that the defendant committed three predicate offenses for a section 848 violation, regardless of whether such offenses were charged in counts in the indictment. The Supreme Court has held that an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). *See also Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States v. Gray,* 790 F.2d 1290, 1296 (6th Cir.1986); *United States v. Piccolo,* 723 F.2d 1234, 1238 (6th

---

**2.** To obtain a CCE conviction under 21 U.S.C. § 848, the government must prove: (1) a felony violation of the federal narcotics laws; (2) as part of a continuing series of violations; (3) in concert with five or more persons; (4) for whom the defendant is an organizer or supervisor; and (5) from which he derives substantial income. 21 U.S.C. § 848; *United States v. English,* 925 F.2d 154, 156 (6th Cir.1991); *United States v. Davis,* 809 F.2d 1194, 1203 (6th Cir.), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987). In construing the "continuing series of violations" element, the only one at issue here, we have held that proof of three or more drug violations is required. *United States v. Sinito,* 723 F.2d 1250, 1261 (6th Cir.1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984).

**3.** Defendant's reliance on *United States v. Rivera,* 837 F.2d 906 (10th Cir.1988) (*Rivera I*); *reh'g granted* 847 F.2d 660 (10th Cir.1988) (*Rivera II*); *aff'd by an equally divided court,* 874 F.2d 754 (10th Cir.1989) (en banc) (*Rivera III*), is misplaced. In that case, an equally divided court affirmed the defendant's conviction, which rested upon the use of uncharged offenses as substantive evidence of the continuing series element of the CCE charge. Thus the original panel holding in *Rivera I,* that in the case of uncharged offenses, the words of the CCE statute alone are not sufficient to meet a defendant's fifth and sixth amendment concerns, is without precedent and is not binding on the trial court in that case. *Rivera III,* 874 F.2d at 755.

Cir.1983), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984).[4] An indictment is generally sufficient if it sets forth the words of the statute itself, as long as the statute itself adequately states all of the elements of the offense. *Hamling*, 418 U.S. at 117, 94 S.Ct. at 2907; *Gray*, 790 F.2d at 1298. Furthermore, a defendant is not entitled to a bill of particulars with respect to information which is available through other sources. *Martell*, 906 F.2d at 558.

■ Count III of the indictment alleges in pertinent part that during 1987 through March 19, 1989, in Lexington, Kentucky and elsewhere Leonardo Paulino—

> unlawfully, willfully, knowingly and intentionally did engage in a Continuing Criminal Enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846 which violations were part of a continuing series of violations of said statutes undertaken by Juan Leonardo Paulino in concert with at least five (5) other persons with respect to whom Juan Leonardo Paulino occupied a position of organizer, supervisor and manager....

It is clear that the indictment sets forth each and every element of the CCE offense. Moreover, although Count III does not list specific predicate acts, it states the specific time frame in which the acts occurred, which would satisfy any double jeopardy concerns.

Furthermore, as defendant acknowledged in his brief, the availability of a bill of particulars provides adequate protection for a defendant's sixth amendment right by providing him with a means of discovering the specific violations the government intends to use at trial. *See United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953); *Glasser v. United States*, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942). Here, although Leonardo Paulino sought a bill of particulars on the conspiracy charge, no similar request was made with respect to the CCE charge.

Thus, we hold that the indictment in this case satisfied constitutional safeguards in that it clearly set forth the statutory elements of the CCE offense and stated a specific time frame. We therefore affirm the district court's refusal to dismiss Count III of the indictment. Because we uphold the indictment on its face, we need not reach the issue of whether the Count III should have expressly incorporated by reference other predicate acts in the indictment.

## IV.

■ Defendant Leonardo Paulino next argues that the district court erred in instructing the jury that it had to find Leonardo Paulino guilty of Count I, the conspiracy count, as one of the "continuing series of violations" elements under the CCE charge in Count III of the indictment. Leonardo Paulino asserts that a section 846 conspiracy {21 U.S.C. § 846} cannot be the predicate act for a section 848 offense {21 U.S.C. § 848}, since conspiracies are inchoate crimes, and section 848 requires proof of a substantive violation.

We have expressly held that a conspiracy under section 846 can be a predicate offense under section 848. *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir.) *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987); *United States v.*

---

4. Defendant's reliance on *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), for the proposition that the failure to allege predicate offenses in the indictment was a violation of his fifth amendment right is inapposite. In that case the Supreme Court held that a prosecution involving 2 U.S.C. § 192, which prohibits the refusal to answer questions pertinent to a subject under inquiry by a congressional committee, pertinency to the subject under inquiry is "the very core of criminality." *Russell*, 369 U.S. at 764, 82 S.Ct. at 1047. Thus, in that case the allegation of the subject was necessary to the sufficiency of the indictment in order to define the chief issue. *Id.* at 766, 82 S.Ct. at 1048. Courts have distinguished *Russell* on this basis. *See United States v. Staggs*, 881 F.2d 1527, 1533 n. 8 (10th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *See United States v. Mobile Materials Inc.*, 871 F.2d 902, 910 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 837, 107 L.Ed.2d 833 (1989); *United States v. Perkins*, 748 F.2d 1519, 1526 n. 11 (11th Cir.1984); *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir.1976).

*Schuster,* 769 F.2d 337, 345 (6th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986). Notwithstanding, we have also held that a defendant cannot be subjected to cumulative punishment for both a conspiracy violation under section 846 and a CCE violation under section 848, even if the conspiracy and CCE sentences run concurrently. *United States v. English,* 925 F.2d 154, 160 (6th Cir.1991).[5] Thus, defendant's conspiracy conviction under Count I of the indictment must be vacated in light of his CCE conviction under Count III. We REMAND this issue to the district court with instructions to vacate Leonardo Paulino's conspiracy conviction.

## V.

Defendants Leonardo Paulino, Carlos Paulino, and Vieyra appeal the trial court's denial of their respective motions for severance. Each alleges "spillover" effects from being required to stand trial with his co-defendants. In addition, Vieyra claims that introduction of "bad act" evidence of co-conspirators Leonardo Paulino and Chazulle were impermissibly suggestive. Carlos Paulino claims that his association with Leonardo Paulino at trial led to jury confusion, that the closing argument on behalf of Leonardo was prejudicial to him, and that the closing argument on behalf of Vieyra referred to Carlos Paulino's failure to testify. Finally, Leonardo Paulino claims that his joinder with co-defendant Chazulle prevented Chazulle from testifying on his [Leonardo Paulino's] behalf.

## A.

■■■■ In conspiracy cases, the general rule is that persons jointly indicted should be tried together. This is especially true where the offenses charged may be established against all of the defendants by the same evidence resulting from the same series of acts. *United States v. Hessling,* 845 F.2d 617, 619 (6th Cir.1988). Once the defendants have been properly joined under

Rule 8(b) of the Federal Rules of Criminal Procedure, a "strong showing of prejudice" is required to justify severance; and a district court's denial of a motion for severance under Fed.R.Crim.P. 14 is reversible only for an abuse of discretion. 845 F.2d at 619. To establish prejudice, a defendant must show that the jury is unable to separate and to treat distinctively evidence that is relevant to each particular defendant at trial. *United States v. Moore,* 917 F.2d 215, 220 (6th Cir.1990) (citing *United States v. Gallo,* 763 F.2d 1504, 1525 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986)), *cert. denied,* —— U.S. ——, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991). Even if the defendant establishes some potential jury confusion, this must be balanced against society's need for speedy and efficient trials. *Moore,* 917 F.2d at 220.

■■■■ In *Gallo,* we stated that a prejudicial "spillover effect" warranting severance "turns in part on whether the numbers of conspiracies and conspirators involved were too great for the jury to give each defendant the separate and individual consideration of the evidence against him to which he was entitled." 763 F.2d at 1526 (quoting *United States v. Toliver,* 541 F.2d 958, 962 (2d Cir.1976)); *see also Moore,* 917 F.2d at 220. *Gallo* held that a district court's refusal to grant a severance was not an abuse of discretion where there were seven indicted defendants, five of whom eventually went to trial, and there was no other showing of compelling prejudice. Similarly, in this case, five of the eight indicted defendants stood trial. Furthermore, the evidence in this case related to one conspiracy, not multiple conspiracies, and much of it was overlapping as to each defendant. As we noted in *Moore,* "[t]he presentation of evidence applicable to more than one defendant is simply a fact of life in multiple-defendant cases;" and "a defendant is not entitled to a severance simply because the evidence against a co-defendant is far more damaging than the

---

**5.** Although not expressly raised by defendant Leonardo Paulino on appeal, the government

conceded the issue at oral argument.

evidence against him." *Moore*, 917 F.2d at 220 (citations omitted). We find no showing that quantity and complexity of the evidence was so overwhelming that the jury was unable to give each defendant the separate and individual consideration of the evidence to which he was entitled. *Id.* at 221.

### B.

■ Vieyra contends that the introduction of prior "bad act" evidence of co-defendant Leonardo Paulino, which allegedly occurred two years before the conspiracy at issue, and Chazulle's arrest, necessitates a severance is without merit. Although we discuss the issue more fully in section VIII, we note here that the description of Paulino's drug dealing in Miami prior to the move to Lexington merely demonstrated how the conspirators became associated and how the conspiracy came about. Further, the evidence regarding Chazulle's arrest in 1988 demonstrated when his role in the conspiracy ended, and the underlying conduct was part of one overall conspiracy. We find neither piece of evidence so injurious to Vieyra as to warrant a severance.

### C.

■ Carlos Paulino claims that his association with his brother and co-defendant Leonardo Paulino led to jury confusion. However, Carlos Paulino has offered no compelling showing that prejudice resulted, and a jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately. *United States v. Thomas*, 728 F.2d 313, 319 (6th Cir.1984) (citation omitted). Carlos Paulino's complaint regarding closing argument on behalf of Leonardo Paulino is likewise without merit. Counsel for Leonardo Paulino did not state that "Juan Carlos was a part of [the conspiracy]." Rather, in attempting to demonstrate that fewer than five people were involved in an alleged organization, counsel for Leonardo merely stated, "You got Juan Carlos Paulino; according to Samuel he's in the organization." It is clear that counsel for Leonardo was arguing in the hypothetical. In any

event, no objection was raised on behalf of Carlos at the time, and the issue is therefore waived on appeal. Fed.R.Crim.P. 12(b)(5) & (f).

### D.

■ Finally, we must examine Leonardo Paulino's contention that his joinder with co-defendant Chazulle prevented Chazulle from testifying on his behalf. Vague allegations, such as the one presented here, do not rise to the level of mandating separate trials. To justify a separate trial, a defendant is required to show that his co-defendant would be willing to testify on his behalf. This requires a showing that the co-defendant would not invoke his fifth amendment privilege, and that the testimony would be exculpatory. *United States v. Whitley*, 734 F.2d 1129, 1139 (6th Cir.1984) (citing *United States v. Goldfarb*, 643 F.2d 422, 435 (6th Cir.), *cert. denied*, 454 U.S. 827, 102 S.Ct. 117, 118, 70 L.Ed.2d 101 (1981)); *see also United States v. Rocha*, 916 F.2d 219, 232 (5th Cir.1990), *petition for cert. filed* February 20, 1991; *United States v. Studley*, 892 F.2d 518, 525 (7th Cir.1989). In his pleadings defendant Leonardo Paulino failed to make any such showing with respect to Chazulle, and has therefore failed to sustain his heavy burden. We therefore find that the trial court did not abuse discretion in this regard. *See Whitley*, 734 F.2d at 1139.

In sum, we hold that these defendants have failed to demonstrate any "spillover effect" so as to justify a severance. Accordingly, the trial court did not abuse its discretion in failing to sever these defendants for trial.

### VI.

■ Defendants Fernandez and Vieyra object to the use of summary witness testimony explaining Government Exhibit 68, an organizational chart reflecting the various players and their roles in the conspiracy; and Government Exhibit 79, which reflected the cash generated from cocaine sales for the period June 1988 to March 1989, claiming that the summary witness's

testimony was inflammatory, unduly prejudicial, and constituted impermissible argument. The defendants argue that a non-expert summary witness is improper under Fed.R.Evid. 602, which requires that a non-expert witness testify only as to matters of which he has personal knowledge. The government counters that the summary witness's testimony is permissible under Fed.R.Evid. 1006.[6]

 Both Fed.R.Evid. 1006 and "the established tradition" in this circuit and others allow the introduction of summary evidence to aid the jury in the examination of testimony or documents in evidence. *See United States v. Scales,* 594 F.2d 558 (6th Cir.), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979); and *United States v. Campbell,* 845 F.2d 1374 (6th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988). The summaries presented here are pedagogical devices "more akin to argument than evidence" since they organize the jury's examination of testimony and documents already admitted in evidence. Thus, strictly speaking, they do not fall within the purview of Rule 1006. *See Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.,* 803 F.2d 250, 257 (6th Cir.1986). This court has indicated, however, that authority for such summaries exists under Fed.R.Evid. 611(a)[7]. *Scales,* 594 F.2d at 563. Such a summary should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence. *See United States v. Campbell,* 845 F.2d 1374, 1381 (6th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988); *Gomez,* 803 F.2d at 257–58; *United States v. Seelig,* 622 F.2d 207, 214 (6th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Scales,* 594 F.2d at 564. Even with such an instruction, a summary may still be con-

sidered too conclusory or inaccurate. *Scales,* 594 F.2d at 564. The admission of summaries is committed to the sound discretion of the trial court. *Campbell,* 845 F.2d at 1381; *Gomez,* 803 F.2d at 257; *United States v. Collins,* 596 F.2d 166, 169 (6th Cir.1979).

While all five defendants did object at trial to the introduction of the witness's testimony, the defendants did not request a limiting instruction at the time of testimony or as part of the jury instructions at the close of proofs. *See Seelig,* 622 F.2d at 214. Furthermore, although the trial judge did not give a cautionary instruction before the summary witness testified, the following jury instruction concerning the nature of the charts and summaries was read to the jury at the close of proofs:

> The charts or summaries prepared by the United States and admitted in evidence received for the purpose of explaining facts disclosed by books, records and other documents which are in evidence in the case. Such charts or summaries are not in and of themselves evidence or proof of any facts. If such charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, the jury should disregard them. In other words, such facts or summaries are used only as a matter of convenience. So, if and to the extent that, you find they are not, in truth, summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

Moreover, the defendants had an full opportunity to cross-examine the witness and thereby "alleviat[e] any danger of inaccuracy or unfair characterization." *United States v. Mann,* 884 F.2d 532, 539 (10th Cir.1989); *United States v. Possick,* 849 F.2d 332, 340 (8th Cir.1988); *United States v. Lemire,* 720 F.2d 1327, 1248 (D.C.Cir. 1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct.

---

6. Fed.R.Evid. 1006 provides in pertinent part:
 [C]ontents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.

7. Fed.R.Evid. 611(a) provides:

(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

2678, 81 L.Ed.2d 874 (1984). Finally, upon review of the record as a whole, we do not find the charts to be substantially inconsistent with the evidence adduced at trial. In sum, we conclude that the district court did not abuse its discretion in admitting the summary witness testimony.

## VII.

Defendant Vieyra contends that the district court erred in denying his motion in limine to exclude evidence of a weapon. Defendant Leonardo Paulino objects to the trial court's admission of evidence relating to his dealing drugs prior to his move to Lexington. Defendant Chazulle appeals the introduction of evidence pertaining to his possession of cocaine in Georgia. Defendants' evidentiary objections are all based on Fed.R.Evid. 404(b) and 403.

 Under Rule 404(b), evidence of "other crimes" is not admissible to prove the character of a person. *See United States v. Ismail*, 756 F.2d 1253, 1258 (6th Cir.1985) ("The law is clear, of course, that evidence of past criminal activity is inadmissible to show criminal propensity"). It is admissible however to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The Supreme Court has held that in determining whether evidence is admissible under Fed. R.Evid. 404(b), "[t]he threshold inquiry a Federal District Court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of the material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771, (1988); *United States v. Zelinka*, 862 F.2d 92, 98 (6th Cir.1988). Secondly, the court must determine "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Id. See also United States v. Acosta–Cazares*, 878 F.2d 945, 948–49 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

 Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *Acosta–Cazares*, 878 F.2d at 948 (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985)). A district court's ruling under Rule 404(b) will be reversed only upon finding of an abuse of discretion. *Acosta–Cazares*, 878 F.2d at 948.

## A.

 Before trial defendants Vieyra and Juan Leonardo Paulino filed motions in limine to exclude as irrelevant and/or unduly prejudicial evidence of an Uzi handgun, marked as Government Exhibit # 24, taken from premises occupied by Leonardo Paulino and Vieyra at the time of their arrest, approximately four months following their indictment. The trial court held that the evidence was admissible since testimony of government witness Hughes referred to a weapon involved in the drug transactions, and because of the government's statement that Torres would later testify that the weapon was used by Carlos Paulino during the conspiracy. On appeal, Vieyra contends that the probative value of the weapon was outweighed by its prejudicial impact under Federal Rules of Evidence 403 and 404, and consequently the evidence should have been excluded.

We find no abuse of discretion on the part of the district court. In addition to the testimony of Hughes, Torres identified Government's Exhibit # 24 as the weapon possessed during the course of the conspiracy by Carlos Paulino. Torres further testified that he had seen Leonardo Paulino carry a weapon on several occasions in connection with the drug enterprise. This court has on several occasions recognized that firearms and ammunition are tools of the drug trafficking trade and have been admitted in drug distribution cases as tools of the drug conspiracy. *See United States v. Marino*, 658 F.2d 1120, 1122–24 (6th Cir.1981) (even though defendant was not charged with any firearms offense, evidence of firearms held relevant and admissible because it tended to prove intent to

promote and protect the narcotics conspiracy); *United States v. Williams*, 704 F.2d 315, 322 (6th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Arnott*, 704 F.2d 322, 325–26 (6th Cir.), *cert. denied*, 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983); *United States v. Gahagan*, 865 F.2d 1490, 1499 (6th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989).

The cases cited by defendant are distinguishable. In *United States v. Zelinka*, 862 F.2d 92, 99 (6th Cir.1988), this court held that cocaine seized from a suspected drug dealer at the time of his arrest was inadmissible where the seizure occurred seventeen months after the conspiracy had ended and the government failed to explain how the evidence related to the conspiracy. In *United States v. Daniels*, 572 F.2d 535 (5th Cir.1978), involving a prosecution for distribution and possession of heroin, the court held it was improper to admit evidence concerning defendant's possession of a sawed-off shotgun, since the shot-gun incident occurred subsequent to the alleged narcotics incident. In both of these cases, the evidence of "other crimes" related to a period subsequent to the conduct in question and was therefore not relevant to the charges in the indictment. Here, by contrast, the evidence adduced at trial indicated that the gun was used during the course and in furtherance of the narcotics conspiracy.

### B.

■ Next we consider Leonardo Paulino's objection to introduction of his prior drug dealing. Government witness Torres testified that Leonardo Paulino was street dealing drugs in early 1986 in Miami, and that later in 1986 Leonardo Paulino and Carlos Paulino were involved in a shootout over a cocaine transaction and moved to Kentucky to escape retribution. Those who moved with Leonardo Paulino to Kentucky included members of the conspiracy charged in the indictment—Chazulle and Carlos Paulino; as well as persons whose names appeared as recipients of wire transfers of drug proceeds over the course of

the conspiracy—Corpa Perdoma and Mairena Suarez. We find that the district court did not abuse its discretion in admitting this evidence since it was clearly admissible for the "legitimate purpose of showing the background and development of a conspiracy." *United States v. Hitow*, 889 F.2d 1573, 1578–79 (6th Cir.1989) (quoting *United States v. Passarella*, 788 F.2d 377, 383 (6th Cir.1986)).

### C.

■ Chazulle contends that his previous arrest and conviction in Georgia was wrongfully introduced in the course of the trial over objection of defendant's counsel. We are unable to find such an objection; in any event, we find that this allegation of error is without merit. Nowhere in the testimony of either Ernest Quinoneos, the Deputy Sheriff of Houston County, Georgia, or Charles Holt, the investigator sergeant with the Houston County Sheriff's Office, is there any reference at all to Chazulle's conviction. Rather, they described the seizure of cocaine from a car driven by Chazulle who was then bearing a driver's license with an address known to be used by the co-defendant Leonardo and Chazulle's driving a car registered to Leonardo. This evidence was introduced to demonstrate the nature and length of Chazulle's participation in the conspiracy. We find no abuse of discretion in the allowance of such testimony.

### VIII.

Defendants Leonardo Paulino, Carlos Paulino and Vieyra each contend for a different reason that the trial court erred in its determination concerning the amount of cocaine involved. Leonardo Paulino claims that the trial court erred when it failed to make a specific finding as to the amount of cocaine involved in the conspiracy. Vieyra argues that the court failed to make a specific finding as to the amount of cocaine involved in his individual case. Carlos Paulino asserts that the court should have considered only the amount of cocaine involved in the conspiracy beginning August 1988,

since he was incarcerated prior to that time.

### A.

Contrary to Leonardo Paulino's assertions, the record reflects that the trial court did in fact make a specific finding that at least 5.25 kilograms and less than 15 kilograms of cocaine were involved in the conspiracy. Each defendant had sought such a finding below. During the sentencing of Fernandez, the court stated:

> The testimony of Samuel Torres establishes that at least 5.25 kilograms were distributed. Additionally, Edward Chazulle was arrested in Georgia with approximately two kilograms of cocaine which would—are attributable to the Juan Leonardo Paulino group. There was undoubtedly additional cocaine distributed in this conspiracy. However, in order to establish the presentence report's 18 kilogram amount, it is necessary to rely heavily on the testimony of Harry Hughes.

The court then found the testimony of Hughes to be not credible. It held that without Hughes' testimony, the government could not establish by a preponderance of the evidence the 18 kilogram amount. It therefore sustained the defendants' objections, and held according to the drug quantity table in the guidelines [8] that the proper offense level was 32 rather than 34. The court incorporated these findings in the sentences of the remaining defendants, thereby sustaining the objection of each defendant to his or her presentence report.

■■■■■ A district court's finding as to the amount of drugs a defendant is to be held accountable for is a factual finding which must be accepted by this court unless clearly erroneous. *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). In this case, there was ample evidence that the amount of cocaine exceeded five kilograms. The Unit-

ed States conservatively estimated that Torres' testimony alone established that he transported 3¾ kilograms and that Carlos transported 1½ kilograms. At least ¼ kilogram was qualified as attributable to Vieyra. Chazulle was caught with 1½ kilograms. These quantities alone add up to more than five kilograms. Moreover, this figure does not include the cocaine muled by Hughes or Helton, or reflect trips taken by Vieyra, Carlos Paulino, and others for which no specific figure was given.

Leonardo Paulino also argues that if the appeals of his co-defendants Chazulle and Carlos Paulino were favorable, it would be necessary to remand this case for resentencing since the two kilos which were the subject of the March 9, 1989, arrest of Torres and Carlos Paulino and the two kilos that Chazulle was arrested with in Georgia are included in this figure. Because we have found those contentions to be without merit, this claim must also fail.

### B.

■■ Defendant Vieyra contends that the district court erred in failing to make a determination as to the amount of cocaine involved in the conspiracy as it related to him. The relevant guideline section to the offense of conspiracy is U.S.S.G. § 2D1.4. Application Note 1 to that section cross-references Application Note 1 to § 1B1.3 (Relevant Conduct), which provides in pertinent part:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.... Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake,

---

**8.** The Drug Quantity Table provides that the base offense level for 15–49.9 kilograms of cocaine or equivalent schedule I or II stimulants, is 34. If the quantity involved is 5–14.9 kilograms of cocaine, the Base Offense Level is 32. *United States Sentencing Guidelines,* page 2.38.

such conduct is not included in establishing the defendant's offense level under this guideline.

Former Application Note 1 to U.S.S.G. § 1B1.3, *reprinted in United States Sentencing Commission Guidelines Manual* (November 1, 1989) (Application Note in effect at time of sentencing).

The evidence adduced at trial indicated that Vieyra was involved in the conspiracy from its inception. Testimony at trial, substantiated by a Greyhound bus ticket admitted as evidence, confirmed that Vieyra transported nine ounces of cocaine on February 8, 1989; and a surveillance photo taken on February 16, 1989, verifies that Vieyra was at an apartment rented by the Paulino group located in the Brittany Square complex in Lexington. Evidence at trial further demonstrated that Vieyra sent sums of money totalling approximately $22,599 to Fernandez and Leonardo Paulino, monies which the government proved were proceeds of cocaine transactions. There was also testimony that Vieyra distributed cocaine in Lexington and transported cocaine from Miami to Lexington. Vieyra played a significant and extended role in the Paulino conspiracy. We therefore find that district court was not clearly erroneous in concluding that Vieyra either knew or could have reasonably foreseen that the conspiracy would involve at least five kilograms of cocaine.

### C.

Carlos Paulino's contention is on a different footing. Relying on the commentary to U.S.S.G. § 1B1.3 cited above, Carlos claims that because he was incarcerated until September 6, 1988, he should not be held responsible for any conduct which occurred before he joined the conspiracy. Carlos Paulino therefore contends that the amount of cocaine attributed to him must be determined beginning in August 1988. Under this formula, that amount would be from 3 to 4.5 kilograms, with an appropriate base level of 28 or 30.

We reject defendant's position as totally inconsistent with the posture he took at sentencing in claiming that his arrest in Georgia was "all part of the same behavior pattern" and that he was "engaging in the same conduct that was described in this case." This argument was an attempt to convince the court that the Georgia conviction should be considered as a part of the conspiracy rather than a prior act, the latter of which would lead to further enhancement of his guidelines. Given defense counsel's position at sentencing, and the statements in his brief to the effect that the evidence revealed that defendant Carlos Paulino did not enter the conspiracy until after he was released from prison, defendant has waived any right to challenge the trial court's finding as to the amount of cocaine involved in this case.

### IX.

The district court adjusted defendant Carlos Paulino's offense level upward by two points for his role as a manager or supervisor in the conspiracy under U.S.S.G. § 3B1.1(b). At sentencing, however, the court found that his role was a minor supervisory one, and reduced Carlos' role in the offense from 3 points to 2 points. Carlos Paulino now contests the two-level increase on the grounds that the court failed to name any person he allegedly organized.

All that is required for enhancement under section 3B1.1 is the participation of at least two culpable individuals so that leadership of some criminal enterprise or organization, however minimal, can be claimed. *United States v. Carroll*, 893 F.2d 1502, 1505 (6th Cir.1990). In determining whether a defendant qualifies for enhancement under section 3B1.1(c), facts that the court should consider include:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others....

Commentary, Application Note Three, § 3B1.1. Here the trial court, focusing on the "defendant's role in the offense," *see United States v. Tetzlaff*, 896 F.2d 1071 (9th Cir.1990), relied on testimony indicating that Carlos assumed the role of manager in his brother's absence. "A finding that a defendant is functioning as an organizer or leader, however, does not necessarily mean that he is directly controlling other individuals." *United States v. Johnson*, 906 F.2d 1285, 1291–92 (8th Cir.1990) (upholding district court's four-level upward adjustment to his base offense level for acting as an organizer).

There was evidence that Carlos Paulino directed the distribution of cocaine in Lexington during his brother's absence. It was also testified that he wired proceeds, rented an apartment, automobiles, and a mobile telephone in the names of other individuals on behalf of the conspiracy. While his status was not as elevated as that of his brother Leonardo, we nonetheless conclude that there was sufficient evidence from which the court could conclude that Carlos Paulino merited a two-point upward adjustment in his guidelines for his role in the offense. Thus, the district court's conclusion was not clearly erroneous. *United States v. Medved*, 905 F.2d 935, 943 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991).

## X.

Finally, Carlos Paulino argues that his prior conviction was improperly considered in calculating his guidelines. As previously discussed in IX.(c), *supra*, his position at sentencing was inconsistent was the position assumed at trial. Carlos Paulino was arrested for that offense on September 6, 1986. Thus, the conviction predated the time frame alleged in the conspiracy. No proof was introduced tending to show that the prior conviction was in the course of and in furtherance of the present conspiracy. We therefore find that the district court's ruling in this regard was not clearly erroneous. U.S.S.G. 4A1.1.

Accordingly, for all the foregoing reasons, we AFFIRM with the exception of Leonardo Paulino's conspiracy conviction which we REMAND to the district court with instructions to VACATE.